### DEVICH *v.* DICK.

1. TRIAL—ARGUMENT—CONDUCT OF COUNSEL.

   The action of the trial court in charging the jury not to consider improper comments of plaintiff's counsel in arguing the. case, having reference to defendant's wealth, cured the error, so as not to require a reversal of the judgment.

2. EVIDENCE—PRIVILEGED COMMUNICATIONS—ATTORNEYS.

   The court rightly excluded from the evidence any cross-examination of plaintiff relating to disclosures made by plaintiff to defendant's attorney on an occasion when plaintiff visited the attorney for advice in a professional capacity before commencing suit, although the lawyer refused to accept the case.

3. PRINCIPAL AND AGENT—CONTRACTS—AUTHORITY OF AGENT.

   Testimony that defendant hired a head bartender who conducted the business in defendant's absence, and employed plaintiff to assist him, that he exercised the power of hiring and discharging help and defendant knew that plaintiff was working in defendant's saloon, that the head bartender had been told by defendant to engage assist-

ance, *held*, to present a case for the jury as to the contract of employment.

4. HUSBAND AND WIFE—CONTRACTS—JOINT PARTIES.

Where plaintiff claimed that defendant employed him and his wife at $60 a month, including $10 per month for the services of the wife in running a boarding house, the court did not err in submitting to the jury the question whether the contract was divisible or joint, and in charging that if the contract was joint and the head bartender employed both to work for himself, plaintiff could not recover; if the former had no authority to hire plaintiff as bartender, the verdict must be for defendant; if he engaged plaintiff for $50 a month as bartender and the jury found he had authority to engage a bartender, plaintiff could recover on the contract of employment.

Error to Gogebic; O'Brien, J., presiding. Submitted June 11, 1913. (Docket No. 81.) Decided September 30, 1913.

Assumpsit in justice's court by Mike Devich against Frank Dick for services as defendant's bartender. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*Julius J. Patek,* for appellant.
*James A. O'Neill,* for appellee.

STEERE, C. J. This is an action in assumpsit, originally brought by plaintiff in a justice's court of Gogebic county for the purpose of recovering approximately four months' wages as bartender, claimed to be due him from defendant. Before trial in justice's court plaintiff declared orally on all the common counts in assumpsit, filing a bill of particulars stating his demand to be for "services rendered by plaintiff for defendant during the months of November and December, 1909, and January and February,

1910, at $50 per month, amounting to $180." Defendant orally pleaded the general issue.

On March 25, 1910, trial was had in justice's court, resulting in a judgment in favor of plaintiff for $180 and costs. Defendant removed the case by appeal to the circuit court of said county, where two jury trials were had. The first trial in that court resulted in a verdict and judgment for plaintiff in the sum of $173. Defendant thereupon made a motion for a new trial, which was granted November 13, 1911; the verdict and judgment being set aside for reasons which are immaterial here. On May 22, 1912, a retrial again resulted in plaintiff's favor; a verdict and judgment being rendered for him in the sum of $180.78. Defendant again moved for a new trial. On November 16, 1912, this motion was denied, and he has now removed the proceedings to this court for review upon a writ of error.

The services for which plaintiff recovered judgment are claimed to have been performed for defendant in the capacity of bartender in a saloon which defendant owned, located in a district of the city of Ironwood, Gogebic county, known as Jessieville. This saloon was so situated and conducted that its patronage came mostly from foreigners working in and around adjacent mines; their nationality being chiefly Croatian, Polish, and Finnish. It is undisputed that defendant owned the saloon, and the business was conducted in his name; he having complied with all the requirements of the law essential to qualify as such proprietor. He was absent from the place, however, most of the time, being manager of the Ironwood Brewery, which position, as he testified, demanded most of his time and attention. He employed in the saloon a man named Simonich, who had previously managed a saloon for others in the same building for several years. Defendant defines him as

the "head bartender." The scope of his authority is in issue.

Plaintiff is a Croatian and, prior to the time he met favor in Simonich's sight, was a toiler in the mines. In the fore part of November, 1909, Simonich did him the honor to tender him the position of associate bartender in defendant's saloon, which he accepted. He left the mines and was employed in and around the saloon from November 14, 1909, to February 22, 1910, which historic date takes further prominence in being adverted to by defendant and other witnesses as "the time when Simonich skipped." The circumstances under which plaintiff terminated his connection with the institution are stated by defendant as follows:

"When I found that Simonich had gone away I went out to the saloon. Nobody was in the saloon but strangers. No bartender there at all. I went through the dining room and through the kitchen and across the alley into the house where Mrs. Simonich lived. * * * When I went back into the saloon I found the plaintiff behind the bar and I told him to get out. * * * When I went into Mrs. Simonich's house she was crying and they were talking loud and it kind of looked to me in a threatening way by their actions. I asked Mrs. Simonich what was the matter and she said, 'Mike is threatening me; he wants me to pay him;' and I chased the whole outfit out of the house."

It is the contention of plaintiff that Simonich, who was in charge of defendant's saloon and running it as defendant's agent, hired him to work there at $50 per month, promising that defendant would pay him; that more than one barkeeper was necessary there and Simonich had authority to employ the necessary help. Defendant denies that Simonich had such authority, claims he was only "head bartender," and that defendant himself personally ran the saloon and hired his bartenders. This question of agency is the

important issue in the case. The court submitted it to the jury, under appropriate instructions, as an issue of fact. The testimony is quite voluminous and conflicting, and the briefs of counsel are swelled with lengthy excerpts from the testimony, with various portions liberally italicized and capitalized. The exhaustive briefs of defendant's counsel contain many ingenious arguments and numerous sound and settled propositions of law, more or less in point, but the case as an entirety impels to the conviction that the paramount issue is ultimately one of fact.

The principal errors relied upon and argued by defendant's counsel are: Unfair conduct by plaintiff's counsel calculated to prejudice defendant with the jury; refusal of the court to permit defendant to show previous contradictory claims of plaintiff; refusal of the court to direct a verdict for defendant; certain portions of the charge relative to knowledge and agency; and the refusal to grant a new trial on the ground that the verdict was against the weight of evidence.

The unfair conduct of counsel, argued as prejudicial, consists of certain references made before the jury to the alleged wealth of defendant. Certain reflections in the argument of plaintiff's counsel along those lines were improper and hazarded the interests of his client. If they were not corrected by the court and error was properly assigned upon them, a reversal on that ground would be a subject of serious consideration, but the court cautioned the jury to disregard them; that they had "nothing to do in this case with the question of the poverty or wealth of either plaintiff or defendant;" and we find no assignment of error which properly presents the question.

Exception to the court's refusal to allow defendant to show previous contradictory claims of plaintiff relates to rulings made in sustaining objections

to certain questions asked plaintiff on cross-examination touching communications between defendant's counsel, who was conducting the examination, and plaintiff at a time prior to the commencement of this action, when plaintiff and his wife visited said counsel's office to consult him in regard to this case and to engage his professional services. Counsel stated to the court that plaintiff then made a statement of facts, to which he listened; that he there declined to take the case and was not retained; that he proposed to show that plaintiff then made "contradictory statements." Objection to this line of inquiry was sustained on the ground that such communications were privileged. We are of opinion that such testimony was rightly rejected. It clearly appeared that plaintiff visited counsel at his office before this action was brought to consult him professionally and retain his services. The communications then made, and which counsel sought to disclose, were made during a conference for the purpose of establishing the relation of attorney and client in this very case. Tentatively, and until counsel declined to take the case, such relation did exist. The communication related to matters in which the professional services of counsel were desired and asked.

"If a person, in respect to his business affairs or troubles of any kind, consults with an attorney in his professional capacity, with the view to obtaining professional advice or assistance, and the attorney voluntarily permits or acquiesces in such consultation, then the professional employment must be regarded as established, and the communication made by the client, or advice given by the attorney under such circumstances, is privileged. * * * It is the consultation between attorney and client which is privileged and must ever remain so, even though the attorney, after hearing the preliminary statement, should decline to be retained further in the cause, or the client, after hearing the attorney's advice, should decline to further employ him." 10 Enc. of Ev. 228.

See, also, *Foster* v. *Hall,* 12 Pick. (Mass.) 89 (22 Am. Dec. 400) ; *State* v. *Tally,* 102 Ala. 25 (15 South. 722).

It is not essential to such relation that any fee be paid, promised, or charged, and such communications are privileged, even though the attorney who was consulted and not retained, as claimed in this case, accepts employment from the party adverse to the person making the communications. *Mack* v. *Sharp,* 138 Mich. 448 (101 N. W. 631, 5 Am. & Eng. Ann. Cas. 109) ; *Cross* v. *Riggins,* 50 Mo. 335.

The assignments of error based on refusal of the court to direct a verdict for defendant and to set aside the verdict rendered as against the weight of evidence present defendant's claim that there was no evidence of Simonich's authority as agent to hire plaintiff which could be submitted as an issue of fact to the jury; and, even should the court find that such evidence appears, the same is so weak and contradictory that a verdict based upon it cannot stand against the positive testimony of the defense to the contrary.

A careful review of the evidence shows clearly that there was abundance of conflicting testimony to present a plain issue of fact for the jury on this question. Not only do many undisputed facts and circumstances in relation to Simonich's employment in the saloon, and the manner in which he conducted the business done there as apparent manager, raise a fair inference of fact, but there is his positive and direct testimony that he was the manager, in charge for defendant, with authority to hire and discharge bartenders; that defendant came there but once or twice a week, staying only from half an hour to an hour, and took an inventory monthly. As to Simonich's authority to hire bartenders, he testifies in part:

"Whoever I thought could draw trade I hired them and he didn't make no kick.

"*Q.* Dick gave you that authority?

"*A.* Yes.    *    *    *

"*Q.* Then you employed Devich for Dick?

"*A.* Sure, Dick had to pay one bartender.

"*Q.* And you put Devich on Dick's account?

"*A.* Yes.    *    *    *

"*Q.* When you hired this plaintiff, Devich, you said you wanted him to come and work for you?

"*A.* Yes, sir.

"*Q.* You put him in there to tend bar; you told him just the same as you told any other bartender? You simply said, 'Come to work for me.' Is that a fact?

"*A.* Yes.

"*Q.* On various occasions you hired bartenders, didn't you?

"*A.* Yes, sir; I did.

"*Q.* You hired them yourself?

"*A.* Yes, sir.

"*Q.* You paid them?

"*A.* Yes.

"*Q.* You had authority from Dick to do so?

"*A.* Yes, sir.

"*Q.* Did Dick ever hire a bartender?

"*A.* No, sir.    *    *    *

"*Q.* And you fired them?

"*A.* Yes, if I had reason.    *    *    *

"*Q.* Without consulting Dick or anybody else, you did that, did you not?

"*A.* Yes, if a man didn't suit me, I fired him and told him to go to the brewery and get his money.    *    *

"*Q.* Dick knew that you were exercising the power of hiring and firing?

"*A.* Yes, sir."

Plaintiff testified positively that he was hired by Simonich to work in the saloon at $50 a month; that he worked there tending bar during the time for which he demanded pay, and that he had not been paid; that defendant had often seen him there at work; had talked with him about the amount of business done there in comparison with other saloons; and on two or three occasions plaintiff had accompanied

defendant from the saloon to the street car when he had asked for some one to attend him. This testimony is disputed by defendant, who testified that he himself was in active, personal charge of the saloon; that he hired the bartenders and ran the business himself; that he never hired plaintiff nor authorized his hiring and did not know he was employed as a barkeeper working for him; that Simonich claimed plaintiff and his wife were working for himself. Defendant also testified that his duties as manager of the brewery took most of his time; that he visited the saloon once or twice a week; that he had seen plaintiff tending bar there on certain occasions; that Simonich, without consulting him, had before hired one bartender whom defendant paid, though Simonich had orders not to hire them without doing so, except that he was given authority to hire extra ones temporarily, in times of rush, around pay days.

Without going into further details, it may be conceded that inconsistencies and contradictions of more or less importance can be pointed out in the testimony of both plaintiff's and defendant's witnesses, who were mostly, if not all, foreigners, but we are impressed that many of the lengthy arguments along that line found in defendant's brief are more properly for the jury than the court. The conflicting testimony as to Simonich's authority fairly raised the issues of fact which were left to the jury by the court.

Plaintiff testified through an interpreter, and other witnesses manifestly either did not clearly understand the import of many questions asked them or they were unable or unwilling to give direct and intelligent answers. With the class of witnesses testifying on both sides in this case, the advantage of personal observation, in seeing them and listening to their evidence as it develops, becomes of more than usual importance. The trial court and the jury had this distinct advantage over one who can only read

the record, and we are far from convinced that the verdict was unjust or so against the overwhelming weight of evidence as, under the principles so often set forth in former decisions, to impel this court to overrule the discretionary action of the trial court in refusing to grant a new and fourth trial.

It was the claim and theory of the defense that Simonich hired plaintiff and his wife together for $60 a month to work for him in a boarding house run by Simonich's wife in the same building as the saloon; plaintiff to also assist in the saloon, when wanted. There was some testimony to that effect. Plaintiff on cross-examination testified that he and his wife were hired by Simonich for $60 per month, but he also testified that his wife was hired to work in the boarding house for $10 per month and he was hired to work in defendant's saloon for $50 a month, and that Simonich said defendant would pay him. Exception is taken to portions of the charge dealing with this phase of the case wherein the court, after stating defendant's claim, said:

"On the other hand, plaintiff claims that while he and his wife were employed together, he was to be paid $50 a month, and that Dick was to pay him, and that his wife was to be paid $10 a month. If that was true, if Simonich had authority to employ plaintiff for Dick, and plaintiff was to be paid $50 per month, then, of course, plaintiff would be entitled to recover."

It is urged that the court in centering his instruction upon this proposition lost sight of other facts which were material to a proper understanding of the issue. The portion of the charge quoted, read with the charge taken as a whole, was not misleading or erroneous, and, without reviewing them at length, the same is true of other extracts from the charge quoted and excepted to. Immediately following the above quotation the court further said:

"If not, and if it was simply a joint contract with no division, and Simonich employed the two of them together to work for himself, then I charge you the plaintiff cannot recover in this case. * * * If he was employed by Simonich to work for Simonich he must look to Simonich for his pay."

After a somewhat detailed review of the case in its various aspects, with a statement of the issues involved and the general rules of law applicable to such cases, presented in different lights, the court finally said:

"To recapitulate: You will first determine whether Simonich had power and authority to hire the plaintiff as bartender to work in that saloon. If he had no such power or authority, then, gentlemen of the jury, even though he did hire the plaintiff to work as bartender, your verdict must be for defendant. If you find by a fair preponderance of the evidence that Simonich had power and authority to employ the plaintiff to work as a bartender for Dick, you may proceed to determine whether or not he exercised such power by hiring this plaintiff to work as such bartender for Dick. If you find by a fair preponderance of evidence that he did so, and that he entered into a contract with the plaintiff in behalf of Dick for plaintiff to work as bartender in that saloon for $50 a month, then, gentlemen of the jury, it would be your duty, having found those two facts in favor of the plaintiff by a fair preponderance of the evidence, to render a verdict in his favor."

We think the charge of the court, as an entirety, was not misleading, contained no reversible error, and properly presented to the jury the issues of fact involved, with the rules of law by which they should be governed in passing upon them.

The judgment is affirmed.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.