HORST v. TIKKANEN.

1. TRIAL—REQUEST TO CHARGE.
   Requests to charge may be presented before the case is argued or submitted to the jury, the better practice being to present them before argument (CL 1948, § 618.59).

2. SAME—REQUEST TO CHARGE—INSTRUCTIONS.
   Requests to charge need not be given in the exact language of the request, but where not substantially covered by the charge as given, will be deemed to have been refused (CL 1948, § 618.59).

3. SAME—INSTRUCTIONS—REQUEST TO CHARGE.
   It is the responsibility of the trial court to explain the issues and the principles of law applicable to the facts in issue including each party's theory of the case, where requests have been duly presented therefor (CL 1948, § 618.59).

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial §§ 519, 520.
[2] 53 Am Jur, Trial §§ 527, 529.
[3] 53 Am Jur, Trial §§ 509, 512, 623–625.
[4] 53 Am Jur, Trial §§ 581, 582, 626.
[5, 6] 53 Am Jur, Trial §§ 554, 573, 579, 607, 608.
[7] 53 Am Jur, Trial §§ 542, 554, 573, 579, 607, 608.

4. AUTOMOBILES—THEORY OF CASE—REQUEST TO CHARGE—INSTRUCTIONS.

Instruction to jury in action arising from collision between plaintiff's eastbound car, just completing a left curve on ice-covered highway down a 3 to 3-1/2% grade, and defendant's westbound truck as it was passing another defendant's station wagon, also westbound but parked partially on the pavement, which failed to present plaintiff's theory of the case (1) with respect to the sudden emergency doctrine, (2) with respect to plaintiff's claim that the truck had crossed the yellow line in the center of the highway in passing the station wagon, and (3) with respect to negligence of the driver of the station wagon in making an impracticable stop on the paved portion of the highway, was reversible error, where plaintiff's requests to charge had covered such theory.

5. SAME—HEAD-ON COLLISION—INSTRUCTION—OBSERVATION.

Instruction to jury which assumed facts neither alleged nor proved with respect to observation by station wagon driver as to other traffic when she stopped partially on pavement and with respect to position of the other defendants' truck at time of head-on collision with plaintiff's car *held*, reversible error in action arising out of collision.

6. SAME—INSTRUCTION—NONEXISTENT INJURY OF DEFENDANT.

It was reversible error in action arising out of head-on collision between plaintiff's eastbound car just completing a left curve on ice-covered highway down a 3 to 3-1/2% grade as it collided with defendants' truck when it passed another defendant's station wagon parked partially on the pavement, to instruct jury that if plaintiff found the station wagon in a position of peril, plaintiff had a duty to exercise due care and diligence so as to avoid injury to defendant operator of the station wagon when there was no claim or proof that such operator had been injured.

7. SAME—STOPPING ON PAVEMENT—INSTRUCTIONS.

Instruction that stopping of defendant's station wagon partly on the pavement so as to pick up a friend was not a prohibited stopping or parking within the meaning of statute, being a temporary stop for a necessary reason not prohibited under the statute which made it unlawful to stop, park or leave standing any vehicle upon the paved part of a highway when it is practicable to stop, park or to leave such vehicle off such part of the highway, *held*, reversible error, since it added to the statutory test of practicability the test of whether the stopping to pick up a friend is a necessary reason (CLS 1956, § 257.672).

Appeal from Marquette; Nebel (Richard W.), J., presiding. Submitted January 10, 1962. (Calendar No. 62, Docket No. 48,597.) Decided April 5, 1963.

Case by Suoma S. Horst against Emil E. Tikkanen, Mildred L. Tikkanen, Paul Gelmi, and Raymond Pajula and Taisto Maki, doing business as Pajula and Maki, Contractors, and as P & M Transit Mix, for injuries sustained in automobile collision. Verdict and judgment for defendants. Plaintiff appeals. Reversed and remanded for new trial.

*Aaron Lowenstein,* for plaintiff.

*McGinn & Fitzharris,* for defendants Tikkanen.

*Eldredge & McDonald (John E. McDonald,* of counsel), for defendant Gelmi.

*Davidson, Clancey & Hansen, (Walter L. Hansen,* of counsel), for defendants Pajula and Maki.

Smith, J. *Parties to the Action.* Plaintiff-appellant is Mrs. Suoma S. Horst, who was seriously injured in an automobile accident on an ice-slippery road when her car collided with a large dump truck owned and driven by Paul Gelmi, defendant-appellee. At the time, Gelmi was hauling a load of sand to a business establishment of defendants-appellees Raymond Pajula and Taisto Maki. Mildred Tikkanen was operating the station wagon involved in the accident owned jointly with her husband, Emil E. Tikkanen, both defendants-appellees. A jury verdict was rendered in favor of all defendants. From a denial of plaintiff's motion for a new trial, this appeal was taken.

*Statement of Facts.* The accident herein involved occurred on November 23, 1955, at or about 4 p.m. on highway 480, near Negaunee in Marquette county. Highway 480 is a 2-lane, paved road consisting of 22 feet of blacktop with 4-foot shoulders on each side. On the day in question, there was an encroachment on the shoulders in the form of a snowbank on each side about 1 and 1/2 feet in width. The road was covered with ice. In the area of the accident, the road as it proceeds westerly stretches upgrade and curves sharply to the north.

Shortly before the accident, the Tikkanen station wagon driven by Mrs. Tikkanen was proceeding westerly along the road heading towards Negaunee. Mrs. Tikkanen saw some friends walking in the same direction and stopped to offer them a ride. The station wagon was stopped with about 4 feet of the vehicle on the paved portion of the road, and the rest of it on the shoulder. While Mrs. Tikkanen was waiting for her passengers, the Gelmi truck, loaded with sand and traveling in the same direction (west), overtook the station wagon and proceeded to pass. In passing, the right side of the Gelmi truck scraped the left side of the stopped station wagon. Plaintiff was driving a sedan easterly, that is, in the opposite direction of the Tikkanen station wagon and the Gelmi truck. A head-on collision occurred between defendant Gelmi's truck and the sedan driven by plaintiff. The Tikkanen station wagon was not immediately involved in the collision. After the accident, both the sedan and truck had their front ends on or near the north shoulder. As to how the vehicles came to rest on the defendants' side of the road was in hot dispute.

It was plaintiff's claim that she was driving her sedan at the rate of 15 miles per hour. She said she made the big curve in the road and started down hill in her own lane, the eastbound lane. She testified

that she first saw defendant Gelmi's truck when she was about 150 feet west of the Tikkanen station wagon; that the truck was being driven at approximately 45 miles per hour; and that the truck was several hundred feet east of the Tikkanen station wagon when she first saw it. Her claim is that Gelmi pulled out around the stopped station wagon, crossed the center line of the highway substantially in the eastbound lane, colliding head-on with her sedan. She claims also that the heavily weighted truck pulled her lighter sedan into the westbound lane where both came to rest. Defendant Gelmi claims that he first saw plaintiff's sedan when he was alongside of the Tikkanen station wagon; that after scraping the side of the station wagon he stopped about 25 feet in front of it. He claimed that he was stopped 2 or 3 minutes before plaintiff's sedan, skidding out of control, crashed into his truck. He says definitely that he was stopped when plaintiff's sedan struck his truck; she claims that both cars were in motion. Defendant Tikkanen, apparently seeing that an accident was about to happen, diverted her attention to her children who were in the station wagon with her and therefore did not see the collision between the Horst sedan and Gelmi truck.

*Theories of the Parties.* Plaintiff's position was that she was placed in a circumstance of sudden emergency because, after rounding the sharp turn in the road, she was suddenly faced with a large truck partly in her lane as it passed the station wagon negligently parked to the side. It was her claim that defendant Tikkanen was guilty of negligence in stopping the station wagon on the highway in violation of the statute, CLS 1956, § 257.672 (Stat Ann 1952 Rev § 9.2372).* Plaintiff also contends

---

* "Outside of the limits of any city and village, it shall be unlawful to stop, park, or leave standing any vehicle, whether attended

that in view of the slippery road conditions defendant Tikkanen was negligent in stopping her station wagon so close to the hilltop as to create a hazard to other traffic; by not seeing that the highway was clear of vehicles before making the stop, and by not attempting to flag down defendant Gelmi in his truck once the alleged danger had been created. Plaintiff claimed further that defendant Tikkanen could have stopped more practicably in a large driveway somewhat east of the point where she stopped her station wagon and that her failure so to do was in violation of the statute.

Plaintiff Horst claimed that defendant Gelmi was negligent in that he was driving his truck without due care and caution so as to be unable to bring the truck to stop within the assured clear distance ahead; that he attempted to pass the Tikkanen station wagon while over the yellow line at a speed so unreasonable as to make an accident inevitable with plaintiff's vehicle approaching from the opposite direction; and that defendant Gelmi was also negligent in attempting to pass the Tikkanen station wagon, when the wagon itself had created a hazard to safe driving by its positioning on the road. She further alleges that Gelmi did not make a proper observation before passing the Tikkanen station wagon; that he was driving his truck at an excessive rate of speed; and that he had crossed over the center line of the highway into plaintiff's eastbound lane of traffic.

As to defendants Pajula and Maki, plaintiff claims that they were responsible for the acts of negligence of Gelmi in that they carelessly permitted him to transport materials used by the defendants when they knew or should have known of the allegedly

or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or to leave such vehicle off such part of said highway."

careless driving record of defendant Gelmi. Plaintiff also claimed that inasmuch as Gelmi was paid according to the number of trips made per day that this encouraged him to engage in excessive speed while transporting materials to defendants' establishment. Plaintiff also contended that Gelmi was in the exclusive employ of Pajula and Maki at the time of the accident. Plaintiff claimed that as a result of the joint and several negligence of defendants and of their concurrent negligence, which negligence was the proximate cause of her injuries, she was entitled to substantial damages.

Defendant Tikkanen denied that plaintiff was placed in a position of sudden emergency, and all other acts of negligence claimed against this defendant. It was the Tikkanen position that plaintiff drove her car on the wrong side of the road "when she did not have her automobile under control, when she failed to keep a proper look-out" and that she was not able to stop within the assured clear distance ahead.

Defendant Gelmi admits that the Tikkanen station wagon was stopped but that there was enough clearing in which to pass. He admitted further that there was a yellow line where Mrs. Tikkanen had stopped and stated further that there was a double yellow line ahead and westerly of the station wagon. He admits grazing the left side of the Tikkanen wagon, and alleges that this was done because of the negligent driving of plaintiff. He also denies that plaintiff was put in a position of sudden emergency. He denies all allegations of negligence. He claims that plaintiff was contributorily negligent and that she was not driving at a reasonable and prudent speed for the conditions then and there existing and that she failed to keep a lookout "for obstructions in the road" and that she could not stop within the assured clear distance ahead. He also claims that

plaintiff failed to keep her vehicle in her own lane of traffic, but that she drove into his lane of traffic and into and against his truck.

Defendants Pajula and Maki denied all allegations of negligence and claimed contributory negligence on the part of plaintiff for substantially the same reasons claimed by the other defendants. These defendants also deny that defendant Gelmi was their employee. They say Gelmi was an independent contractor operating as a licensed common carrier by authority of the public service commission.

*Claims of Error.* The claims of error have to do mainly with the judge's instructions to the jury. Jury arguments were concluded at approximately 4:30 p. m. of one day. On the following morning, at approximately 9:20, plaintiff's counsel presented 25 requests to charge. We are advised that the requests covered approximately 7 pages, much of which was single-spaced. At chambers, the matter was discussed. Plaintiff's counsel claims that he assiduously labored to prepare the charges but that he was hampered by reason of the fact that his secretary had received a broken arm in an accident and therefore was unable to assist him in typing same. On objection of defense counsel the trial judge refused the request to charge, indicating that he would endeavor to cover the law in the case. Defendants' requests to charge were submitted some time earlier and a large number were read as submitted. Plaintiff's attorney sets forth in his brief 44 questions for review. Counsel for defendants Tikkanen accept plaintiff's statement of questions but paraphrase and regroup them into 32 questions. Attorneys for defendants Gelmi and Pajula and Maki reduce the number of questions to 5.

It would not be fruitful to discuss all of plaintiff's claims of error. We do discuss, however, several of those which we believe are patently reversible.

Plaintiff claims that her request to charge was sub-
mitted on time and therefore the trial judge erred in
refusing to grant the requests to charge.  Reliance
is placed upon the statute.  CL 1948, § 618.59 (Stat
Ann § 27.1039) :

"Sec. 59.  After the evidence is concluded, and
*before the case is argued or submitted to the jury,*
either party may present written requests for in-
structions on any point of law arising in the cause,
and upon such written requests so presented, an
argument may be made by counsel for the respective
parties previous to the court passing thereon.  Any
request not substantially covered by the charge as
given shall be deemed to be refused."

In connection with this statute, we said in *Morri-
son* v. *W. R. Reynolds & Co.*, 224 Mich 61, at page
65, "Counsel are in time if they submit their written
requests before the case is submitted to the jury,
but the better practice is to present them before
the arguments.  This plan is more helpful to the
court and most beneficial to counsel.  Under the cir-
cumstances, we should consider defendant's requests
refused.  However, if none of the requests should
have been given, the court's refusal to consider them
was not reversible error."  Consonant with plaintiff's
theory that defendant Tikkanen created a hazardous
condition on the highway by stopping the station
wagon contrary to law; and that defendant Gelmi
was negligent in attempting to pass the Tikkanen
station wagon with his heavy-loaded dump truck,
and that while in the act of passing crossed the
center line of the highway and struck plaintiff's
automobile, plaintiff requested instructions covering
this theory.  Further, plaintiff requested instructions
as to her theory that she was faced with a sudden
emergency as she rounded the big bend in the road.
After reviewing plaintiff's requests to charge, we
do not say that the various requests as made must

have been given in the exact language of plaintiff. The rule is clear that this is not required. It is clear, however, that it is the responsibility of the trial court to explain the issues and the principles of law applicable to the facts in issue. This would include each party's theory of the case.

In *Schattilly* v. *Yonker*, 347 Mich 660, 665, it was stated "There could be no error in the trial judge declining to accept plaintiff's requested instructions, in their exact wording, so long as in his own words he set forth plaintiff's theory of the case (in the event there was testimony to support it) and instructed the jury on the law applicable thereto."

First we quote from the trial court's charge to the jury that portion in which he purports to set out plaintiff's theory:

"Now, it is the claim of the plaintiff that on this day in question, November 23d, that as she was driving in an easterly direction, she was going to her home, and that her home was approximately 200 feet to the east of where the Tikkanen station wagon had come to pause or stop or park to permit the taking on of this lady and her child, and that as she came down this road she could look to the east and she observed there the station wagon and observed the gravel truck coming along, and that it was icy, and you will remember the testimony on that; that the road was slippery, that she was coming down a grade, I believe the testimony is all the way from 3% to 3.6, along about from 3 to 3-1/2% of a grade. * * *

"Now, it is her claim that as she drove along there on this icy road and over on her own side of the road, within about 6 inches of the edge of the road on her own side, that she was struck by the truck driven by the defendant, Paul Gelmi, and that from this collision that occurred she suffered these injuries for which she claims damages."

This above quoted section from the judge's charge does not fairly state plaintiff's theory of the case: it does not instruct with regard to the sudden emergency doctrine claimed by plaintiff; it fails to state plaintiff's claim that defendant Gelmi crossed the yellow line in the center of the highway in passing the Tikkanen station wagon; and it fails to set forth the theory that defendant Tikkanen was negligent in making an impracticable stop on the paved portion of the highway. An examination of the balance of the charge reveals that when either of these elements is alluded to, it is from the viewpoint and theory of one or the other defendants.

There is other reversible error which ought to be commented upon briefly. In other places, the charge assumes facts neither alleged nor proved. We quote the charge again: "It is the claim of the defendants, Emil and Mildred Tikkanen * * * that at the time that she (Mrs. Tikkanen) stopped the motor vehicle there were no cars coming from either direction that she observed." According to the record, Mrs. Tikkanen testified that she made no observations to the rear before she stopped her vehicle. Quoting further from the charge: "The Tikkanens further claim that after the Gelmi truck came to rest that the Horst vehicle came across the highway and struck the front of the Gelmi truck in a head-on position and the Gelmi truck was then stopped very close to the snowbank about in the same angle." We do not find from the record that the Tikkanens made any such claim.

We think error is manifest from an additional quotation from the trial court's charge to the jury:

"I charge you further, members of the jury, that if you find that the plaintiff, Suoma Horst, discovered, when the exercise of due care should have discovered, Mildred L. Tikkanen and her automobile station wagon in this case in a position of peril in

sufficient time to be able by the exercise of due care and diligence and the use of the means at hand, to avoid injury to Mildred L. Tikkanen and to avoid striking the truck or colliding with the truck, that Suoma Horst failed to exercise such care and use such means with the result that the accident occurred, the defendants Tikkanen would not be liable to Mrs. Horst regardless of whether Mrs. Tikkanen came into such position of peril without fault of negligence on her part or through her own negligence which had cause to operate as a proximate cause of the injury.

"Now, plaintiff has claimed that the defendant Tikkanen by stopping her station wagon on the highway violated a part of our law known as CLS 1956, § 257.672 (Stat Ann 1952 Rev § 9.2372), and I quote you that law on that. Section 672 provides: 'Outside of the limits of any city and village, it shall be unlawful to stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or to leave such vehicle off such part of said highway.'

"Now, that is if it was not practicable to stop or park her car off the main traveled part of the highway, then I charge you that the stopping of her station wagon by Mrs. Tikkanen on the shoulder and partly on the paved portion of the highway for the purpose of picking up her friend, does not constitute a prohibited stopping or parking within the meaning of the above statute. A temporary stop for a necessary reason is not prohibited under the statute."

It was clearly error to instruct the jury that if the Tikkanen station wagon were found in a position of peril by plaintiff that she had a duty to exercise due care and diligence so as to avoid injury to Mildred L. Tikkanen. This assumes a theory not expressly developed by defendants Tikkanen either

in the pleadings or the proofs. It also cites a non-existent injury to Mrs. Tikkanen.

As to that portion of the instruction having to do with the statute pertaining to stopping, parking, or leaving a vehicle on a main traveled part of the highway, the instruction was in error. The issue of fact presented in the case, under the statute as cited, is whether or not it was practicable for Mrs. Tikkanen to stop her car off the main traveled part of the highway. The instruction as given adds another test of whether the stop was for "a necessary reason." The question was not whether stopping to pick up a friend is a necessary reason, but whether or not it was practicable to stop off the traveled part of the highway.

Reversed and remanded for new trial. Costs to plaintiff.

BLACK, KAVANAGH, and SOURIS, JJ., concurred with SMITH, J.

CARR, C. J., and DETHMERS and KELLY, JJ., concurred in result.

O'HARA, J., took no part in the decision of this case.