## AGEE v. WILLIAMS

1. WITNESSES—EVIDENCE—EXPERT TESTIMONY—MEDICAL WITNESS.

    Trial court's allowing a doctor to give his opinion whether plaintiff was suffering from a permanent condition and whether he would need future medical attention was proper even though the doctor last saw the plaintiff in 1961 just after the accident in suit and did not see him again until he questioned him just before the trial in 1967, where the doctor was qualified as an expert and asked to assume the truth of plaintiff's testimony about his present condition.

2. EVIDENCE—EXPERT TESTIMONY—ADMISSIBILITY.

    Expert testimony is admissible as an exception to the general rule which confines a witness to a recitation of facts, despite

<hr />

REFERENCES FOR POINTS IN HEADNOTES

[1]  31 Am Jur 2d, Expert and Opinion Evidence § 119.
    Necessity of expert evidence to warrant submission to jury of issue as to permanency of injury or as to future pain and suffering, or to sustain award of damages on that basis.  115 ALR 1149.
[2]  31 Am Jur 2d, Expert and Opinion Evidence § 16.
[3]  31 Am Jur 2d, Expert and Opinion Evidence § 181.
[4]  58 Am Jur, Witnesses §§ 460, 522.
[5]  58 Am Jur, Witnesses §§ 483, 484.
[6]  53 Am Jur, Trial § 468.
[7]  29 Am Jur 2d, Evidence § 849.
[8]  38 Am Jur, Negligence §§ 27, 49.
[9]  53 Am Jur, Trial § 541.
[10]  45 Am Jur 2d, Interest and Usury § 97.
    Date of verdict or date of entry of judgment thereon as beginning of interest period on judgment.  1 ALR2d 479.

the objection that it is speculative or that it constitutes a
conclusion, because the expert has peculiar knowledge or
special experience which ordinary jurymen do not possess and
the testimony will, therefore, enable them to understand better
the facts which will be developed by other evidence.

3. Evidence—Expert Testimony—Weight.
    It is up to the jury to judge the weight which it will give to
    expert testimony.

4. Evidence—Privileged Communications—Attorney and Client—
    Waiver of Privilege.
    Communications between an attorney and his client are priv-
    ileged; the privilege is that of the client and he may waive
    it if he so chooses, but it is not within the power of the
    court or any other party to an action to waive the privilege
    for him.

5. Evidence—Privileged Communications—Attorney and Client.
    Defense counsel's attempts to examine plaintiff as to informa-
    tion which he furnished his attorney regarding his injuries in
    order to determine the origin of a claim that plaintiff had
    · received an aggravation of a pre-existing condition were
    properly refused by the trial court because these communica-
    tions between plaintiff and his attorney were privileged.

6. Trial—Argument to Jury—Collateral Matters.
    Trial court's allowing plaintiff's counsel to refer to certain
    collateral matters during his closing argument to the jury
    was proper when the remarks in question only referred to
    . and rebutted points raised in the closing argument of defense
    counsel.

7. Trial—Evidence—Admissibility—Interrogatories.
    Trial court's refusal to permit defense counsel to place in evi-
    dence, as an exhibit, a copy of the interrogatories he sub-
    mitted to plaintiff and the answers to them was proper, where
    no proper foundation was laid because plaintiff never conceded
    that he had made the answers to the interrogatories and that
    fact was not otherwise proved.

8. Automobiles—Negligence—Extent of Injuries—Burden of
    Persuasion—Sufficiency of Evidence.
    Plaintiff must establish to a reasonable certainty the causal
    relationship between an accident and his injuries and whether
    the injuries will be permanent before he can recover from
    defendant for permanent injuries; therefore the rejection of

a requested instruction that these elements must be proved by a reasonable *medical* certainty was proper.

9. TRIAL—INSTRUCTIONS TO JURY—REVIEW BY APPELLATE COURT.
   Instructions to the jury are to be considered as a whole and if the court properly instructs the jury on the applicable law as it pertains to the facts and theories of a particular case it cannot be criticized for failure to repeat *verbatim* requests to charge made by the parties.

10. JUDGMENT—DAMAGES—INTEREST—STATUTE—DATE OF ACCRUAL OF INTEREST.
    Statute providing for the accrual of interest on judgments operates retrospectively, and therefore interest accrues on a judgment from the date the declaration was filed even though the amendment providing for this was effective after the declaration was filed (CLS 1961, § 600.6013, as amended by PA 1965, No 240).

Appeal from Wayne, Theodore R. Bohn, J. Submitted Division 1 December 6, 1968, at Detroit. (Docket No. 4,315.)  Decided May 28, 1969.

Declaration by William James Agee against Joseph H. Williams for damages resulting from an automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Plaintiff cross-appeals. Modified and affirmed.

*Zeff & Zeff,* for plaintiff.

*Vandeveer, Doelle, Garzia, Tonkin & Kerr (John M. Heaphy,* of counsel), for defendant.

BEFORE: LEVIN, P. J., and HOLBROOK and ROOD,* JJ.

ROOD, J.  On June 6, 1961, in the afternoon, the plaintiff was traveling in a westerly direction on Mack avenue in the city of Detroit. The defendant,

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

Joseph H. Williams, a cab driver, was traveling in a northerly direction on Dubois and allegedly failed to stop at a stop sign for Mack avenue and consequently collided with the vehicle driven by the plaintiff. For the purposes of this appeal, the negligence of the defendant, Joseph H. Williams, is not disputed. The plaintiff was 55 years of age at the time and received injuries to his back, neck and leg. Plaintiff claims he was thrown out of his car onto the street as a result of the collision. He did not go to a hospital that evening, nor did he see a doctor until June 14, 1961. He saw Dr. Prisbe on June 14, 16 and 20, 1961, and was admitted to the Plymouth Hospital on June 22, 1961. Plaintiff saw other doctors, including Dr. Downs, Dr. Corbett and Dr. Cohen.

This case was tried before a jury on April 10, 11, 12 and 13, 1967, and resulted in a verdict for the plaintiff in the amount of $44,400. A judgment was entered on April 19, 1967. The defendant filed a motion for a new trial on May 4, 1967, which was denied.

The defendant raises several questions. Dr. Prisbe, a medical witness produced by the plaintiff, after being qualified as an expert, testified that he saw the plaintiff following the accident on June 14, 1961, when he took a history from the plaintiff as to his involvement in the accident of June 6, 1961. Dr. Prisbe saw the plaintiff again on June 16 and on June 20. He took x-rays of plaintiff's back in his office. Dr. Prisbe's diagnosis was that the plaintiff had a severe right sacroiliac sprain and lumbosacral sprain with sciatica with hyposthesis and parathesis of the right leg, with possibility of a ruptured disc between the 4 and 5 lumbar vertebrae or in the lumbosacral region with resultant radiculitis of the spinal nerve. Dr. Prisbe went on to

express an opinion that there was a causal relationship between the plaintiff's disability at the time of trial and the accident in June of 1961. He further stated that the plaintiff, in his opinion, was permanently injured.

The defendant objected during the course of the doctor's testimony, first on the ground that the witness was not a properly qualified expert. This objection was made after the witness was asked to assume that in 1964 x-rays were taken which were negative and that in 1966 x-rays were taken which showed a thinning of the disc spaces in the lumbar area and signs of osteoarthritic spurring in the lumbar area. The doctor was asked whether or not he had an opinion based upon a reasonable certainty as to whether or not the condition found by him in 1961 in the plaintiff's back produced changes shown by the x-rays as late as 1966. After inquiring whether or not the x-rays taken in 1966 would be produced in court, and being assured that they would be produced, the court overruled the objection and allowed the witness to express his opinion. The doctor was then asked to assume that the plaintiff, after he left the hospital, tried to treat himself by the use of liniments and drugs, but that as far as the low back pain was concerned it gradually worsened and the pain radiated into his right leg; and that as of today the plaintiff is still suffering distress and pain in the lumbar area and pain and numbness in the right leg, which is claimed to be more severe than when the doctor examined the plaintiff in 1961. Assuming that the claims of the plaintiff were true, the doctor was asked to give an opinion whether or not plaintiff was suffering from a permanent condition and whether or not he did need future medical attention. Defendant objected to this question on the ground that the doctor last saw the plaintiff in 1961 and

that anything that the plaintiff might have told him since that time would be hearsay, and, further, that the doctor was not qualified to give his opinion on the present condition of the plaintiff. The court overruled this objection and allowed the doctor to answer.

Defendant claims that it was error to permit Dr. Prisbe to express conclusions with respect to plaintiff's condition at the time of trial and as to causal relationship between the accident in 1961 and his condition at the time of trial in 1967 claiming that such testimony was purely conjectural on the part of Dr. Prisbe.

It was not error to allow the doctor to offer his expert opinion, based upon his findings and diagnosis made shortly after the accident and upon the present condition of the plaintiff as shown by the testimony of the plaintiff. It is true that the doctor assumed the truth of the testimony of the plaintiff regarding his condition at the time of trial but the defendant was allowed to cross-examine the doctor at length in order to develop the facts upon which he based his opinion. It is not claimed that the testimony which was assumed to be true by the expert was not in fact offered in evidence and did not become a part of the record in this case. An examination of the transcript indicates that the assumed condition of the plaintiff at the time of trial was amply supported by his testimony.

The objection to the testimony of Dr. Prisbe that it was speculative emphasizes the distinction between the testimony of an expert witness and that of a non-expert. As a general proposition, expert testimony is admissible and constitutes an exception to the general rule which confines a witness to a recitation of facts. The testimony of an expert witness (if he is in fact an expert) is admissible as evidence

against the objection that it is conjectural or speculative or that it is a conclusion for the reason that the expert has peculiar knowledge or special experience which ordinary jurymen do not possess and that his testimony will, therefore, enable them to understand facts which will be developed by other evidence. The jury judges the weight which they deem the testimony should receive. GCR 1963, 605, deals with the use of the testimony of expert witnesses. See, also, *Dudek* v. *Popp* (1964), 373 Mich 300, 306, 307, for a discussion of the use of expert testimony and the modern trend in this regard.

Defendant contends that the court erred in refusing to allow examination of the plaintiff as to information which he furnished his counsel regarding his injuries. Defendant contends that this type of cross-examination was proper in view of the claim set forth in the complaint and made at pretrial that the plaintiff had received an aggravation of a preexisting condition. The attempt to cross-examine the plaintiff was objected to on the ground that any communications with plaintiff's attorney were confidential and privileged.

The law in this State is well settled that communications between an attorney and his client are privileged. The privilege is that of the client and he may waive the privilege if he so chooses, but it is not within the power of the court or any other party to the action to waive the privilege for him. *Schaibly* v. *Vinton* (1953), 338 Mich 191. The Court in this case cites the holding in *Passmore* v. *Estate of Passmore* (1883), 50 Mich 626. The case of *Devich* v. *Dick* (1913), 177 Mich 173, cited by plaintiff, holds that any communication made by a client to his attorney in respect to his business affairs or troubles of any other kind must be regarded as hav-

ing been made under such circumstances as to render the communication privileged.

Defendant further contends that the court erred in allowing counsel for plaintiff in his closing argument to refer to and rebut points raised in the closing argument by the defendant. The court did not err in permitting the plaintiff to refer to these collateral matters in his closing argument. An examination of the transcript indicates that in the closing argument of defendant reference was made to the fact that plaintiff's counsel at the pretrial conference claimed that the plaintiff had suffered an aggravation of a pre-existing condition. Defendant has opened the door by making such an argument to the jury and it was not error for the court to allow reference to the question of aggravation of pre-existing condition in view of the fact that the matter was interjected into the case by the defendant himself.

Just before resting his case the defendant offered in evidence certain interrogatories which had been answered by the plaintiff during the course of preparation for trial. Counsel for the defendant made the offer in evidence under the provisions of GCR 1963, 302.4, 309. The court refused to permit the introduction of the interrogatories. Defendant contends that the court erred in excluding these interrogatories as an exhibit in the case.

As pointed out in the case of *Ruhala* v. *Roby* (1967), 379 Mich 102, 112:

"The Court Rules permit parallel options in the use at trial of depositions. If the deposition of a party or his agent is offered under GCR 1963, 302.4 (2), there is a use of the deposition which parallels the calling of an opposite party for cross-examination under the statute. If the deposition of an adverse party, however, is offered under GCR 1963, 302.4(3), it parallels the calling of an adverse party

as a witness without announcing the purpose therefor and makes the deponent the witness of the party calling him."

At the time the interrogatories were offered into evidence, the plaintiff had testified and had been cross-examined by the defendant and the interrogatories had been used in an attempt to impeach the plaintiff's testimony. Defendant did not indicate to the court the purpose for which he intended to introduce the interrogatories, although it can be assumed that they were offered either for purposes of impeachment or as paralleling the calling of the plaintiff as an adverse witness for cross-examination. It should be noted that defendant did not offer to read the interrogatories into evidence as is believed to be the proper practice but rather apparently proposed to have them marked as an exhibit and received in evidence.

It further appears that in laying a foundation for the possible reception of the interrogatories, defendant asked the plaintiff whether or not he had ever signed any interrogatories and at first the plaintiff stated that he had not or had no recollection of ever having signed such interrogatories. Plaintiff was finally asked specifically as to interrogatory No 20 and apparently it was shown to the witness; the witness again stated that he had no recollection of the question.

While the defendant later succeeded in getting the plaintiff to recall that he had "seen" "these answers"— presumably the answers to the interrogatories—defendant did not pursue the matter further other than to obtain an admission that as to question No 20 the answer was in fact inconsistent with plaintiff's testimony from the stand. At no time did the plaintiff concede that he had made "these answers" nor was that asserted fact otherwise proved. Under

these circumstances, it cannot be said that the defendant laid a proper foundation for the admission of the interrogatories.

Defendant further alleges error on the basis of the failure of the trial court to give his requested instructions Nos 2 and 3. Request No 2 is as follows:

"The plaintiff, in this case, claims permanent injury to his neck and back. I instruct you that unless you can find from the evidence in this case, there is, in fact, a reasonable medical certainty that the back complaints are due to this accident and will exist for the balance of this man's life, you will not consider or award any damages for permanent injuries."

Defendant cites *In re Boyer's Estate* (1937), 282 Mich 552; *Brininstool* v. *Michigan United R. Co.* (1909), 157 Mich 172; and *Prince* v. *Lott* (1963), 369 Mich 606.

An examination of the cases cited by defendant reveals that the rule does not require a reasonable medical certainty either as to the causal relationship between the accident and the injuries or on the question as to whether or not the injuries will exist on a permanent basis. The so-called *Brininstool* rule is as follows (p 180):

"It is the generally accepted rule that to entitle a plaintiff to recover damages presently for apprehended future consequences of an injury, there must be such a degree of probability of such consequences as to amount to reasonable certainty that they will result from the original injury."

In the case of *Shinabarger* v. *Phillips* (1963), 370 Mich 135, 142, the Supreme Court stated as follows:

"It was not error for the court to charge the jury on future pain and suffering merely because there

was no medical testimony that future pain and suffering would occur."

An examination of the court's entire instruction shows clearly that the court instructed the jury fully as to the burden of proof and the necessity for the plaintiff to prove each and every element of his case by a preponderance of the evidence. The court further charged as follows:

"I charge you further in estimating the compensatory damages in cases of this type, all consequences of the injury, future as well as past, are to be taken into consideration, including the bodily pain and mental anguish which is shown by evidence to be reasonably certain to have naturally resulted from the injury."

Further, the court stated as follows:

"The elements which you, the jury, are entitled to take into account consist of all personal inconvenience, the sickness which plaintiff endured, the loss of time from other pursuits, all bodily and mental suffering, impairment of capacity to earn money, money expense, the permanent annoyance which is liable to be caused by the injuries suffered, and all other effects of the injury complained of proximately relating thereto and following as a natural, reasonable result of the damage caused."

Instruction No 3 requested by defendant is as follows:

"I charge you that the fact that I have given you instructions on the subject of possible damages to the plaintiff, William James Agee, or that the attorney may have argued about damages, is not to be taken by you as any information by this court, or any admission of the defendant, that the plaintiff was injured as a result of any negligence of the defend-

ant, or that any damage was caused as a result of any such negligence. As I have previously instructed you, the burden of proof is upon the plaintiff to show what actual damage he has, or will suffer. Plaintiff has no right to ask you to speculate or to guess or to conjecture whether all, or any of his damages may have resulted or may result, including damages such as those claimed for pain and suffering, now and in the future. If you are unable to make this determination from the evidence, or if the evidence is unsatisfactory in this respect, or lacking totally, you may disregard the damage and contentions of the plaintiff."

Defendant cited *Woodyard* v. *Barnett* (1953), 335 Mich 352. The case cited by defendant deals with the issue of proximate cause. The requested instruction is nothing more than a different statement to the jury of the rule requiring the plaintiff to sustain the burden of proof of proximate cause. The trial court gave its standard instructions dealing with the burden of proof and also with proximate cause, which were proper and adequately presented the issues. It is well-established law that the trial court is not obliged to give a charge in the exact language of the request even though the request may be based upon a quotation extracted from an opinion of the Supreme Court. The charges of the trial court are to be considered as a whole and if the court properly instructs the jury on the applicable law as it pertains to the facts and theories of a particular case he cannot be criticized for a failure to repeat *verbatim* other requests to charge that may be made by counsel merely because they may be proper insofar as they go. *Horst* v. *Tikkanen* (1963), 370 Mich 65; *Knickerbocker* v. *Samson* (1961), 364 Mich 439; *Lober* v. *Sklar* (1959), 357 Mich 166.

Defendant further contends that the lower court erred in awarding the plaintiff interest on the judgment from the effective date of PA 1965, No 240, which amended the previous statute (CLS 1961, § 600.6013 [Stat Ann 1969 Cum Supp § 27A.6013]).

Both parties agree that the trial judge was in error on this ruling, the defendant contending that interest should be charged from the date of the entry of judgment and plaintiff, on his cross-appeal, contending that interest should be.awarded from the date of filing the complaint.

This question has been settled by the recent case of *Ballog* v. *Knight Newspapers, Inc.* (1969), 381 Mich 527, recently decided by the Supreme Court of Michigan.   The Court held (pp 541, 542):

"We conclude the amendment related to remedies and modes of procedure and repeat what we said in *Hansen-Snyder Co.* v. *General Motors Corp., supra,* [(1963), 371 Mich 480] that 'in the absence of language clearly showing a contrary intention', we hold the amendment 'be held to operate retrospectively and apply to all actions accrued, pending, or future.'"

Defendant moved for a new trial setting forth the usual reasons plus most of the alleged errors now advanced on this appeal.   Each of these grounds of alleged error have been dealt with in this opinion and no error has been found.

Defendant contends that although the various errors taken separately might not constitute reversible error, nevertheless, where taken together, that their combined effect deprived the defendant of a fair trial.   There is no merit to this contention. The rulings of the trial court have been reviewed in this opinion and have been found to be proper. It is difficult to see how a series of correct rulings

could combine when taken together to constitute error and require a new trial.

The judgment should be affirmed, except that interest is allowed from the date of the filing of the complaint.

All concurred.