## In re PERRIGO COMPANY, Petitioner.

### No. 97–1372.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1997.

Decided Oct. 23, 1997.

---

Joe A. Sutherland and Peter J. Meyer (argued), Gary W. Garner (briefed), Katherine N. O'Connell, Patrick J. Kelleher, Gardner, Carton & Douglas, Chicago, IL, Stephen D. Turner, Law, Weathers & Richardson, Grand Rapids, MI, for Petitioner.

Joel Seligman (argued), University of Arizona College of Law, Tuscon, AZ, M. Clay Ragsdale (briefed), Law Offices of M. Clay Ragsdale, Birmingham, AL, Steven E. Cauley (briefed), Little Rock, AR, for Respondent.

Before: WELLFORD, MOORE, and COLE, Circuit Judges.

WELLFORD, J., delivered the opinion of the court, in which COLE, J., joined. MOORE, J. (441–449) delivered a separate opinion concurring in part and dissenting in part.

## OPINION

WELLFORD, Circuit Judge.

Plaintiffs filed a stockholder's derivative action on behalf of the corporation involved in this controversy, Perrigo Company ("Perrigo"), which has its principal place of business in Allegan County, Michigan. Plaintiffs, non-residents of Michigan, brought this suit based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(2). The principal defendants are present or former directors, officers, or controlling shareholders of Perrigo. Other defendants are securities investment companies designated "underwriter defendants." Perrigo now petitions this court to issue a writ of mandamus vacating a previous order of the district court and preventing the district court from ordering production of a report which Perrigo claims is privileged material. The following background information is necessary to the disposition of this petition.

In the underlying derivative suit, plaintiffs claim (among other things) that the defendants' actions constituted concealment of true facts regarding the corporation and its financial condition, breach of fiduciary duty, wrongful insider trading of Perrigo stock, and absence of good faith with respect to a large sale ("a registered public offering") of Perrigo shares listed on a public stock exchange. It is asserted that those actions profited the individual selling shareholders, directors, and officers at the expense of the corporation and, consequently, to the detriment of the shareholders generally. The complaint refers to a related but separate securities fraud lawsuit, which was brought as a class action and involves substantially the same parties and the same alleged misconduct at issue here. *Picard Chemical Inc. Plan v. Perrigo Co.*, No. 95–CV–141 (W.D.Mich.) (hereinafter referred to as "the class action" or "the securities action").

The plaintiffs claim that the defendant directors were dominated by defendants Michael J. Jandernoa and Henry L. Hillman (Perrigo's Chief Executive Officer and alleged controlling shareholder, respectively), who allegedly were the principal beneficiaries of the improper and/or illegal activities. They claim that their derivative suit is necessary because the corporation refused to take the appropriate action against the wrongdoers despite its knowledge of the situation.

Perrigo filed a motion to dismiss the derivative lawsuit pursuant to M.C.L. § 450.1495. That section of the Michigan Business Corporation Act provides:

> (1) The court shall dismiss a derivative proceeding if, on motion by the corporation, the court finds that 1 of the groups specified in subsection (2) has made a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation ... If the determination is made pursuant to subsection (2)(c) or (d), the plaintiff shall have the burden of proving that the determination was not made in good faith or that the investigation was not reasonable.

(2) A determination under subsection (1) may be made by any 1 of the following:

(d) By all disinterested independent directors.

M.C.L. § 450.1495. The factual basis for the motion was that Perrigo's only allegedly disinterested independent director, Peter Formanek, had conducted a four-month investigation and had determined that maintenance of the derivative action was not in Perrigo's best interests. To help conduct his investigation, Formanek retained the assistance of an independent legal counsel. Formanek, with the assistance of counsel, prepared a 198–page Report ("the Report") that details his findings and conclusions regarding the desirability of maintaining the derivative lawsuit. Among other things, Formanek concluded that there was no deception of the market, intentionally or negligently, during the period before, during, and immediately after an October 1993 secondary public offering. He concluded that he did not believe that Perrigo would likely prevail on any of its potential derivative claims relating to the class action, so such claims should not be pursued.

Perrigo relied on Formanek's recommendation as the basis for its motion to dismiss. Faced with having to prove that Formanek's decision was not in good faith or was not based on a reasonable investigation, plaintiffs sought production of the Report. Perrigo refused to produce it, however, claiming that it was protected by work-product immunity and the attorney-client privilege. The district court addressed the issue for the first time in its opinion dated July 22, 1996. *See Kearney v. Jandernoa*, 934 F.Supp. 863 (W.D.Mich.1996). It held that any attorney-client privilege was waived when Perrigo relied upon the Report in seeking dismissal. However, the court further held that the waiver did not extend to other parties, such as the plaintiffs in the class action lawsuit. Therefore, the Report could be used only by the derivative plaintiffs in responding to the motion to dismiss.

Perrigo moved to clarify and modify the July order and opinion. On November 8, 1996, the district court entered an order modifying in part the July order by vacating the "waiver" analysis and finding instead that the plaintiffs had established a substantial need for the Report and that undue hardship would result from the court denying the plaintiffs the Report.[1] *Kearney v. Jandernoa*, 949 F.Supp. 510 (W.D.Mich.1996). The court referred to and incorporated its analysis in an opinion entered at about the same time in the class action. *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F.Supp. 679 (W.D.Mich.1996). Because the *Picard* opinion is the basis for the holding in the derivative action, a brief summary is pertinent to the instant petition for mandamus.

In *Picard*, the class action plaintiffs sought production of the Report from Perrigo. The district court held that the Report was protected by the attorney-client privilege and work-product immunity. The court found specifically that "Perrigo has waived neither the privilege nor the immunity in the class action suit with respect to the Report." *Id.* at 693. For the plaintiffs in the class action to obtain the Report, the court found, they must show substantial need and undue hardship. They could not do so, the court held, because they had other means of discovering the information in the Report.[2] Therefore, only the derivative plaintiffs were entitled to the Report.

The court went on, however, to discuss the policies behind public access to court records, reasoning that "[a] judicial record must have a role in the adjudication process in order to be accessed by the public." *Id.* at 690 (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). After reviewing the pertinent case law, the court said:

> [O]nce the Report is submitted to this Court to induce reliance upon the Report, the public interest in open adjudication outweighs the interests underlying the attorney-client privilege and work product immunity. Therefore, although the Report

---

1. Otherwise, the July 1996 order remained in full force and effect. *Kearney*, 949 F.Supp. at 512.

2. The district court also rejected several other arguments raised by the class action plaintiffs that are not pertinent to this appeal.

is protected by both the attorney-client privilege and work product immunity, the Report will have to be disclosed to the public once the Report is submitted to the Court for this Court's determination of whether Formanek made a good faith judgment after a reasonable investigation. *Id.* at 692. The court determined that "[t]his ruling gives Perrigo control of whether and when the Report will be submitted and become part of the public record." *Id.* The district court opined that Perrigo could withdraw its motion to dismiss if it feared public access, or it could wait until the conclusion of all discovery in the derivative action in determining whether it chose to submit the Report to the court in the class action. *Id.*

As stated before, the district court altered its reasoning in the instant derivative action "for the reasons set forth" in the *Picard* order. *Kearney,* 949 F.Supp. at 511. It maintained its holding that the Report was protected by the attorney-client privilege and work product immunity, but it found that the derivative plaintiffs were entitled to the Report because, unlike the class action plaintiffs, they could establish substantial need and undue hardship. In vacating the "waiver" analysis, the court found that a determination regarding waiver was unnecessary in light of its finding of hardship. The court concluded that the derivative "plaintiffs, and only [the derivative] plaintiffs are entitled access to the Report." *Id.* at 512.

That order did not put the issue to rest. When other defendants in the derivative action also sought disclosure of the Report, the district court entered an order allowing them access provided the parties entered into a stipulated protective order which would protect the contents of the Report in a manner consistent with the November 1996 *Picard* order. The parties submitted such a protective order in February of 1997. The order governs the treatment of the Report once it is released to the plaintiffs, but not once it is incorporated into court pleadings.

Still wishing to keep the Report under wraps, Perrigo filed a new motion to dismiss. Although Perrigo claims that this motion raises new grounds, a careful reading of the motion shows that the Report and what plaintiffs must show to overcome it remain the primary issues. Perrigo also moved to modify the November 1996 opinion, or, alternatively, to certify the question of law to the Michigan Supreme Court.

On March 14, 1997, the district court denied defendant's motion for reconsideration. The court reiterated its holdings and again directed Perrigo to provide the plaintiffs with a copy of the Report. The court noted:

> Once Plaintiffs obtain the Formanek Report, they will determine whether or not the Report will be submitted to the Court with their response to either or both of Perrigo's pending motions [to dismiss]. However, there are still open questions of whether this case will be resolved between the parties after Plaintiffs have seen the Formanek Report or whether the Report will be submitted by either side. In any event, if and when the Report is submitted by either side in order to induce reliance by this Court, it will become a public record for the reasons previously stated by this Court.

Although the court found here that it was questionable "whether the Report [would] be submitted by either side," the court made plain in the *Picard* order that Perrigo's submission of the Report "must occur at some point before this Court rules on Perrigo's motion," and that Perrigo's submission will "make the Report part of this Court's judicial records," *i.e.,* Perrigo will have waived its rights at that time. *Picard,* 951 F.Supp. at 691. Consequently, Perrigo was faced with choosing to maintain its motion to dismiss but waive any rights in the Report, or withdraw its motion to protect its privilege and immunity in the Report. Perrigo moved for an interlocutory appeal or to stay the proceedings pending a petition for a writ of mandamus. The district court's final order denying those motions was entered on March 31, 1997. The court ordered Perrigo either to deliver the Report to plaintiffs within 14 days or its motions to dismiss would be stricken. The instant petition and emergency motion for stay followed. We granted the stay pending the disposition of the merits of the petition for mandamus relief.

## ANALYSIS

Mandamus relief is an extraordinary remedy, only infrequently utilized by this court. Our review of petitions for mandamus relief are usually limited to "questions of unusual importance necessary to the economical and efficient administration of justice," or "important issues of first impression." *EEOC v. K–Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir.1982); *see also FDIC v. Ernst & Whinney*, 921 F.2d 83, 85 (6th Cir. 1990). We have recently discussed the framework to apply in cases such as this one in *In Re Chimenti*, 79 F.3d 534 (6th Cir. 1996). There, quoting from *In re School Asbestos Litigation*, 977 F.2d 764, 773 (3d Cir.1992), we stated that we were in favor of a "flexible" rather than a "rigid" approach:

> Some flexibility is required if the extraordinary writ is to remain available in extraordinary situations. "The writ is a safety valve (one of several safety valves, in fact) in the final-judgment rule, and its proper use cannot be wholly reduced to formula."

*Chimenti*, 79 F.3d at 539 (quoting *In re School Asbestos Litigation*, 977 F.2d at 773). *Chimenti* reiterated now familiar factors to consider set forth in *In re Bendectin Products Liability Litigation*, 749 F.2d 300, 304 (6th Cir.1984):

(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

*Chimenti*, 79 F.3d at 540. *Chimenti*, however, pointed out that "*Bendectin* did not require that every element be met, observing that the factors would often be balanced in opposition to each other." *Id.; see also In re NLO Inc.*, 5 F.3d 154, 156 (6th Cir.1993).

The district court briefly described the Report involved:

> To assist in his investigation and report, Mr. Formanek hired Anton R. Valukas and the law firm of Jenner & Block of Chicago, Illinois. On December 15, 1995, Mr. Formanek rendered his report. The Court has read portions of the report and scanned the entire report. The report contains a detailed factual and legal analysis of the securities fraud claims alleged in the securities fraud case currently pending before this Court. The report discusses interviews that Mr. Formanek's counsel had with employees of Perrigo, and it also discusses legal theories which are relevant to the securities fraud action. The report concludes "that it would not be in Perrigo Company's best interest, at this time, to pursue any of the three derivative claims described in the Demand. . . ." (Formanek Report at 198.)

*Kearney v. Jandernoa*, 934 F.Supp. 863, 865 (W.D.Mich.1996). The district court made the following observations as to whether the Report was privileged within the meaning of the statute:

> Perrigo argues that there can be adequate discovery and resolution of these issues without permitting the plaintiffs access to the report itself. This Court disagrees. In fact, the report will probably be the best evidence of Mr. Formanek's good faith and the adequacy of his investigation, or lack thereof. Certainly, this Court will want to have the report before it when it rules upon Perrigo's motion to dismiss. Moreover, this Court will not rule on the motion to dismiss in reliance upon the determination contained in the report unless plaintiffs have had the opportunity to read and comment upon the report. Therefore, even if there is work product protection for the report, there is good cause to disclose the report to the derivative plaintiffs during discovery so that the derivative plaintiffs can properly prepare their response to Perrigo's motion to dismiss under Section 495.

As to Perrigo's claim that the report is protected by Perrigo's attorney-client privilege, this Court disagrees. The key point of distinction between the instant case and the cases cited by Perrigo is that Mr. Formanek's report is not simply submitted to Perrigo or an independent committee of Perrigo in order to enable it or them to make a recommendation or decision regarding possible wrongdoing of corporate officers or directors, indemnification, or the defense of an action. Rather, the determination contained in the report is being submitted *to the Court* under Section 495 as a complete and substantive defense to the derivative claims.

*Id.* at 866 (emphasis in original).

We note that several cases involving discovery issues have determined that this extraordinary remedy was warranted. In one somewhat analogous case, the court issued a petitioner mandamus relief to vacate a district court order which permitted plaintiffs' counsel to examine documents protected by attorney-client privilege. *Chase Manhattan Bank, N.A. v. Turner & Newall,* 964 F.2d 159 (2d Cir.1992). Among other things, *Turner & Newall* stated:

> *Unlike other circuits,* we have rarely used the extraordinary writ of mandamus to overturn a discovery order involving a claim of privilege. *See In re Weisman,* 835 F.2d 23, 26 n. 3 (2d Cir.1987); *see also* 16 C. Wright, A. Miller, & E. Cooper et al., *Federal Practice and Procedure* § 3935, at n. 20 (1977 & Supp.1991) (citing cases that used mandamus to review claims of privilege).

*Id.* at 163 (emphasis added). Yet, emphasizing the importance of the attorney-client privilege, the court issued a mandamus in the dispute, noting:

> In the case of the attorney-client privilege, however, a litigant claiming the privilege would probably prefer almost anyone other than adversary counsel to review the documents in question. The attorneys'-eyes-only condition simply does not limit disclosure to persons whose knowledge of the confidential communication is not material to the purpose of the privilege. To the contrary, it allows one kind of critical

disclosure—to opposing counsel in litigation—that the privilege was designed to prevent.

> . . .

> The privilege rests on the belief that in an adversary system, a client's full disclosure to an attorney is a necessary predicate to skillful advocacy and fully informed legal advice. The existence of the privilege thus allows attorneys to assure clients that any information given to their attorneys will remain confidential.

*Id.* at 164, 165. Mandamus in that case was deemed to be the only adequate means to obtain the relief requested, to avoid prejudice not otherwise correctable, and because the issue involved was deemed particularly important. Another court has similarly stated:

> Mandamus may properly be used as a means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality. *Haines v. Liggett Group Inc.,* 975 F.2d 81, 89 (3d Cir.1992); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1118 (3d Cir.1986); *Sporck v. Peil,* 759 F.2d 312, 314, 315 (3d Cir. 1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230; *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 592 (3d Cir.1984). *See also, Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159 (2d Cir.1992); *In re von Bulow,* 828 F.2d 94 (2d Cir.1987). We find that the petitioners have no other adequate means to attain relief from the district court's order that compels the disclosure of privileged information and work product.

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 861 (3d Cir.1994).

The plaintiffs, on the other hand, rely upon another case which involved a shareholder's derivative action and the effect of the recommendation of a "special litigation committee" that the corporation not pursue a shareholder suit. *Joy v. North,* 692 F.2d 880 (2d Cir.1982). The *Joy* court discussed the business judgment rule and held for a broad role for judicial inquiry in reviewing such a rec-

ommendation, not limiting scrutiny "to the good faith, thoroughness and independence of the special litigation committee." *Id.* at 889. We note, however, that the court in *Joy* applied Connecticut law, which emphasizes "traditional fiduciary obligation." Connecticut had not adopted the Michigan statute which is presently before us.

 Turning to the framework for considering mandamus in this circuit, we conclude that Perrigo has no adequate means to attain the discovery relief it seeks except by mandamus, and that it may otherwise be prejudiced by disclosure of the privileged Report. In balancing these factors, we believe that this case presents a situation in which mandamus is appropriate, adopting this court's more flexible approach. We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm. The corporate privilege presents special problems in this situation.

When the client is a corporation, special problems arise in applying the privilege. As fictitious entities, corporations can seek and receive legal advice and communicate with counsel only through individuals empowered to act on behalf of the corporation. *See Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985).

In *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the Supreme Court addressed the issue of the proper scope of the attorney-client privilege in the corporate setting. Rejecting the "control group" test, the Court held that the privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation. 449 U.S. at 394, 101 S.Ct. at 685.

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.,* 881 F.2d 1486, 1492 (9th Cir.1989). *Admiral Ins. Co.* also brought out the difference between this attorney-client privilege and the work-product rule:

In ordering production of a privileged statement on the facts of plaintiffs' assertion that they could not otherwise obtain the information contained in the statement, the district court confused the attorney-client privilege with the work-product rule. The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship. *See Upjohn,* 449 U.S. at 401, 101 S.Ct. at 688.

*Id.* at 1494.

We adopt this analysis as a correct statement of the law. The work product rule would apply to documents, records, reports, exhibits, and the like which may be contained in the Report, because those documents were created "in anticipation of litigation." Other opinions, testimony and/or statements of witnesses made to counsel in confidence, and certain memoranda would be subject to the attorney-client privilege.

We find that the issues involved in this petition meet the standards necessary to consider the merits of this petition for mandamus relief. As we discussed, we believe that Perrigo has no other adequate means to attain the relief it desires, and any error in this regard would not be correctable on appeal. Furthermore, the Michigan Supreme Court has not addressed these questions arising out of the operation of the important new statute regulating stockholder derivative suits. We have discovered little judicial precedent addressing the discovery aspects of this legislation, an area of increasing corporate and shareholder concern. Therefore, we turn to the merits of Perrigo's petition.

 We discern no appropriate mandamus relief with respect to the district court's finding that the derivative plaintiffs are entitled to the Report based on substantial need and

undue hardship only for purposes of responding to Perrigo's motion to dismiss. Though we have found no cases dealing with this particular issue in Michigan, we agree that the purposes of the Michigan statute will be furthered by allowing the plaintiffs access to the Report. As a matter of fairness and practicality, the derivative plaintiffs (unlike the class action plaintiffs) will need the Report in order to "rebut the presumption that Formanek acted in good faith and made a reasonable investigation." *Picard,* 951 F.Supp. at 687. Further, there was no error in ordering disclosure of the Report to the district court *under seal.* Even if Perrigo were correct that the court's only function under the Michigan statute is to determine whether Formanek's recommendation of dismissal represents a good faith determination based upon a reasonable investigation by all disinterested independent directors of Perrigo, the court must have the Report before it can properly rule on Perrigo's motion and perform its judicial function. We make no judgment at this juncture about the district court's actual function under the Michigan statute.[3]

■ We are concerned, however, with this portion of the district court's March 14, 1997, order:

> Once Plaintiffs obtain the Formanek Report, they will determine whether or not the Report will be submitted to the Court with their response to either or both of Perrigo's pending motions. However, there are still open questions of whether this case will be resolved between the parties after Plaintiffs have seen the Formanek Report or whether the Report will be submitted by either side. In any event, if and when the Report is submitted by either side in order to induce reliance by this Court, it will become a public record for

the reasons previously stated by this Court..

(Footnote omitted). When read together with the *Picard* order, the effect of this mandate is apparent. Perrigo must produce the Report and waive all of its rights thereto if it chooses to maintain its motion to dismiss. In the *Picard* order, however, the court found specifically that Perrigo has not voluntarily waived either its attorney-client privilege or work product immunity. *See Picard,* 951 F.Supp. at 688–90. Also, it noted that Perrigo did not use the Report in its motion, nor did it disclose any of the contents to the Perrigo Board and counsel. *Id.* at 689.

This circuit has found that a corporation's submission of portions of a report does not waive the attorney-client privilege if the report is not released in "significant part." *See In re Grand Jury Proceedings October 12, 1995,* 78 F.3d 251, 254 (6th Cir.1996) (relying on *In re Dayco Corp. Derivative Securities Litigation,* 99 F.R.D. 616, 619 (S.D.Ohio 1983)). In the instant case, Perrigo did not release even a small portion of the Report to support its claim that Formanek's recommendation was made in good faith or that his investigation was reasonable. Although Perrigo requested that it be allowed to submit a redacted version of the Report for that purpose, the court rejected that request.[4] *Kearney,* 949 F.Supp. at 511.

Therefore, Perrigo was faced with the choice of waiving the protection of the Report or withdrawing its motion to dismiss. Such a result certainly could not have been intended by § 450.1495, which was designed specifically to allow the disinterested independent directors to determine whether a derivative suit would be in the corporation's best interests. The statute involved does not require that the disinterested independent director issue a report with its recommendation, nor does it require that he consult with

---

3. The district court, in our judgment, gave Perrigo the benefit of considerable doubt in holding that the Report was protected, in its entirety, by Perrigo's corporate attorney-client privilege and work product immunity. The court clearly made that determination, however, and we need not decide if this constituted error. Nor do we decide whether Formanek permissibly constituted "all disinterested independent directors" within the meaning of the Michigan statute.

4. The district court denied that request because Perrigo could cite to no authority allowing it to take such an action. *Kearney,* 949 F.Supp. at 511. We see cannot discern from the opinion why the court would not allow Perrigo voluntarily to waive its rights to portions of the Report.

counsel. However, in order to perform a meaningful investigation, particularly in large corporations, consultations with counsel and exchanging of documents would be commonplace.

The dissent should recognize that a kind of automatic public disclosure of the Report upon the filing of a motion to dismiss under the Michigan statute will hinder future communications between the independent directors and attorneys reviewing whether a derivative action is in the corporation's interest. Requiring public disclosure in this and similar derivative suits would cause future disinterested independent directors in Michigan reviewing whether a derivative litigation is in the corporate interest not to produce extensive written materials. These concerns constitute additional reasons for our conclusion that the Michigan legislature could not have intended the effect of the district court's order. Those valid interests, which most certainly are important to Michigan lawmakers, provide a "reasoned basis" for our decision.[5] Michigan would surely not wish to discourage disinterested independent directors from working candidly with counsel in discharging their duties under the statute. *See* Cyril Moscow et al., *Michigan's Independent Director,* 46 Bus. Law 57, 59 (1990) ("[T]he statute is structured to be an effective monitor of management, particularly in the area of managerial integrity."). A finding that would force Perrigo to waive all of its rights with respect to the privileged material would have such an effect.[6]

The actions of the district court, which we approve apart from ordinary public disclosure, which is the real basis of the dissent's disagreement, do not deny any opposing party access to the Formanek Report information important to their position in this case. We do not deem, at this juncture of the proceedings, that Perrigo has utterly waived its privilege from public disclosure under Michigan law cited by the dissent, *Howe v. Detroit Free Press,* 440 Mich. 203, 487 N.W.2d 374 (1992). So-called "fairness" considerations simply do not require public disclosure under these circumstances, and what discovery has been directed to the other parties in no way prejudices them. We simply do not understand the dissent's continued emphasis on keeping the privileged material (the Report) "secret from the opposing party," "shielding prejudicial information," and therefore "unfair" and inhibiting to the "truth-seeking process." Nothing of the sort has occurred under the district court's orders which we have not disturbed. *See footnotes 3 and 6 of the dissent.* We make no "presumption favoring Perrigo;" rather, we mandate a further hearing to consider all the appropriate balancing factors before ordering full public disclosure, thereby setting aside entirely the important privilege and immunity entitlement in this case.

The district court's order also has the effect of giving the derivative plaintiffs, representing a tiny fraction of Perrigo's shareholders, the untrammeled power to waive Perrigo's protections in the Report if Perrigo does not first do so.[7] By doing so, they

---

5. As stated above, we have discovered little judicial precedent addressing the discovery aspects of legislation dealing with stockholder derivative suits. We must make our decision based on what we believe Michigan would do under similar circumstances.

6. See also the district court's discussion in *Picard,* 951 F.Supp. at 692, recognizing the probable consequences of a ruling that the public should have access to the Report, including the potential for increased bargaining leverage for stockholders, invitation of unscrupulous attempts to "graymail" the corporation into settlement, and misuse of the derivative action by attorneys who hope to gain handsome fees.

7. The dissent claims that we have misconstrued the district court's opinion, in that the district court did not effectively give the plaintiffs the

power to waive Perrigo's privilege. On the contrary, however, the district court's meaning is apparent from language in its decisions. In its March 14, 1997, order, the district court stated that "[o]nce *Plaintiffs* obtain the Formanek Report, *they will determine whether or not the Report will be submitted* to the Court with their response to either or both of Perrigo's pending motions [to dismiss]." Notably, in the district court's July, 1996, opinion, the court specifically contemplated that the plaintiffs would be able to disclose portions of the Report by submitting it in defense of the motion to dismiss. The court even explained in a footnote that the plaintiffs should confer with the court regarding the portion of the Report that *they would be entitled to disclose* in order to make their arguments. *Kearney,* 934 F.Supp. at 867 n. 2. Although that order was later vacated, the court's final conclusion creates

could reveal the entire Report, which may contain highly confidential information, business trade practices or secrets, or other materials helpful to competitors and prejudicial to Perrigo itself. Although the district court purports to "give[ ] Perrigo control of whether and when the Report will be submitted and become part of the public record," *Picard*, 951 F.Supp. at 692, that control can be exercised only by its decision to pursue or withdraw the motion to dismiss. If Perrigo pursues the motion, then the district court has given the derivative plaintiffs the option of submitting the Report in defense of the motion and thereby publicizing its contents. We find that such a result would be contrary to Michigan law, which holds that "it is not within the power of the court or any party to waive the privilege for [the client]." *Agee v. Williams*, 17 Mich.App. 417, 169 N.W.2d 676, 679 (1969) (citing *Schaibly v. Vinton*, 338 Mich. 191, 61 N.W.2d 122, 124 (1953)).

The entire panel agrees that the equities involved in this case weigh in favor of the district court's decision to order disclosure of the Report to the plaintiffs and to the court. We disagree, however, with the dissent with respect to the balance of the equities and the application of the law involved in determining whether the Report should be disclosed to the public *at this juncture*. We believe it is important to conduct a hearing at a later time to determine the wisdom of such a course, as Plaintiffs' counsel conceded at oral argument.

■ We recognize that the public has a right to copy and inspect judicial records. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569–73, 100 S.Ct. 2814, 2823–25, 65 L.Ed.2d 973 (1980). "[That right], however, is not absolute; district courts have the discretion to deny or permit access to judicial records." *Picard*, 951 F.Supp. at 691 (citing *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312). This Report should not become a part of the "judicial record" until the district court has read the Report

and has adequately weighed the interests of public against the interests of Perrigo in maintaining its privilege as to all or part of the Report.[8] If and when the district court intends to rely on the Report in making a decision in this case, then *at that time* it should conduct a hearing regarding whether the Report or parts thereof should be disclosed to the public, or whether that information should remained sealed. We look to language of a case cited by the dissent in connection with this holding:

> In applying the balancing test, we counsel that a court "should begin its analysis with a presumption in favor of preserving the privilege." Accordingly, the burden of establishing a waiver under the balancing approach rests on the party seeking discovery. Further, we emphasize that discovery, if allowed, should be *narrowly limited* to those portions of the privileged material *that bear directly on the issues at hand*. As the Court in *Rohn, supra*, 98 Mich.App. at 600, 296 N.W.2d 315, aptly cautioned, the need to pierce the veil of confidentiality "does not mean that defendants should receive wholesale access to the confidential records of others."

*Howe v. Detroit Free Press, Inc.*, 440 Mich. 203, 487 N.W.2d 374, 383 (1992) (emphasis added; citations omitted).

With respect to discovery of an investigative report protected by the attorney-client and work product protections, we take note that public corporations, such as Perrigo, are required by a myriad of laws and regulations to report regularly in considerable detail their financial dealings. The public, therefore, already has full access to security information, financial data, and stock information of Perrigo, as well as a wealth of information about officers and directors. We see no need at this stage, therefore, in the interest of "fairness," to give confidential Report information to plaintiffs in a hostile securities action (a part of the public domain). The parties in this case will have full access to this Report. Certainly, there is no require-

---

the same result. Under these circumstances, we disagree with the dissent's interpretation of the district court's orders.

8. The district court is in the best position to make such determinations in the first instance.

ment, as indicated by the dissent, for documents not a part of the Report itself which may have been produced in confidence to Formanek or his counsel as investigators.

We have indicated that mandamus relief is not warranted with respect to that part of the district court's order making the Report available to the plaintiffs subject to the protective order. We have also indicated that mandamus relief is not warranted with respect to the district court's examination, under seal, of said Report. As the district court found, Perrigo did not waive its attorney-client privilege by submitting the Report to the Court for its *in camera* review. *Picard*, 951 F.Supp. at 688 (quoting *United States v. Zolin*, 491 U.S. 554, 568–69, 109 S.Ct. 2619, 2628–29, 105 L.Ed.2d 469 (1989)). We are concerned, however, with that part of the March 14, 1997, order holding that the Report, if submitted by either party "to induce reliance" by the district court, automatically "become[s] a public record." That condition, we believe, requires mandamus relief, because it would force Perrigo to choose between maintaining its motion to dismiss or waiving its privilege to the Report, and it would give the plaintiffs the power to waive Perrigo's protections and reveal the entire Report to the public. We make this judgment based on the purposes behind the Michigan statute, and we are bound to determine what we believe a Michigan court would do under the same circumstances.

It may be that for good and sufficient reasons at some point in the proceedings, *after* a full hearing on the matter, the district court may conclude that public disclosure of the Report or certain portions thereof is necessary and appropriate for limited purposes. We deem it clear error, however, to direct that simply by "submitting" the Formanek Report, in purported compliance with the Michigan statute, to "induce reliance" by the court (which will undoubtedly occur), automatically places it in the public domain. "To hold otherwise may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1978) (en banc).[9] The district court itself may study, examine, interpret, and inspect the Report without making it public property in connection with the disposition of the motion to dismiss.

We **GRANT** mandamus relief, then, only in the narrow respect indicated. We **SET ASIDE** that portion of the district court's order which reads: "In any event, if and when the Report is submitted by either side in order to induce reliance by this Court it will become a public record for the reasons previously stated by this Court." The case is **REMANDED** to the district court with instructions to **VACATE** the designated sentence and its effect from the March 14, 1997 order.

MOORE, Circuit Judge, concurring in part and dissenting in part.

I agree that a petition for a writ of mandamus is an appropriate vehicle for obtaining immediate appellate review of a lower court's order compelling the production of documents claimed to be protected by privilege.

---

**9.** In *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1978) (en banc), a civil litigant sought production of privileged documents that a corporation had turned over to the SEC for as part of an internal fraud investigation. The litigant argued that the corporation had waived any privilege that had attached to the documents because of the voluntary disclosure to the SEC. The court held that the voluntary disclosure did not totally waive the privilege, given the "separate and nonpublic" nature of the SEC investigation. *Diversified Indus.*, 572 F.2d at 611. Courts have been reluctant to extend that holding outside the facts of that case, reasoning that, under normal circumstances, waiver as to one party should be waiver as to all. See, e.g., *Westing-*

*house Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424–25 (3rd Cir.1991) (rejecting *Diversified Indus.*); *Permian Corp. v. United States*, 665 F.2d 1214, 1221–22 (D.C.Cir.1981) (same); *United States v. Massachusetts Institute of Technology*, 957 F.Supp. 301, 304 (D.Mass. 1997) (same); *but see Byrnes v. IDS Realty Trust*, 85 F.R.D. 679, 685 (S.D.N.Y.1980) (following *Diversified Indus.* on similar facts); *In re Grand Jury Subpoena Dated July 13, 1979*, 478 F.Supp. 368, 372–73 (E.D.Wis.1979) (same). Though we need not decide whether we would approve of a "selective" waiver in this case, we believe that some of the interests considered in *Diversified Indus.* are similar to those in the instant case.

*See* 28 U.S.C. § 1651(a); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 482 (3d Cir.1995). In the instant petition, however, Perrigo has failed to make a convincing case that it has a clear and indisputable entitlement to such extraordinary relief.

As with the majority, I agree that the derivative plaintiff must have access to the Formanek Report to respond meaningfully to Perrigo's motion to dismiss. Similarly, the district court must have access to the Report to undertake a considered examination of Perrigo's motion, even assuming that the court's inquiry under the Michigan Business Corporation Act is limited to ascertaining whether Formanek's recommendation represents a good faith determination based upon reasonable investigation. *See* MICH. COMP. LAWS ANN. § 450.1495 (West 1990). As explained below, I base these conclusions on Perrigo's implied waiver of disclosure protections for the Report.

Further, I am not convinced that the Report should remain inaccessible to the public if either party uses any portion of the Report in the ensuing litigation. Though the majority opinion expresses that it is "concerned" about this central issue in the case, it does not adequately explain how such concern gets translated into law.

## I

For the purposes of the instant petition for mandamus, I am willing to assume that the Formanek Report was initially entitled to the protections afforded by the attorney-client privilege and work-product immunity doctrines. These doctrines together serve vital needs in the orderly administration of justice through enriching the dialogue between attorney and client and safeguarding a sound adversary system by enabling attorneys to prepare for litigation sheltered by a certain degree of privacy. *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 397–98, 101 S.Ct. 677, 682, 686–87, 66 L.Ed.2d 584 (1981); *United States v. Nobles,* 422 U.S. 225, 236–39, 95 S.Ct. 2160, 2169–71, 45 L.Ed.2d 141 (1975).

I believe, however, that Perrigo cannot claim the protections afforded by either doc-trine to prevent disclosure of the Report. Under Michigan law, which governs the attorney-client privilege in this diversity case, *see* FED.R.EVID. 501, privileges "can be waived through conduct that would make it unfair for the holder to insist on the privilege thereafter." *Howe v. Detroit Free Press, Inc.,* 440 Mich. 203, 487 N.W.2d 374, 379 (1992) (footnote omitted). In *Howe,* the Michigan Supreme Court resolved a claim of implied waiver of a statutory privilege through balancing fairness considerations. The court subscribed to the view that, although beginning with a presumption favoring the preservation of privilege,

> [i]n a civil damages action, however, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.

*Id.* 487 N.W.2d at 382, 383–84 (quoting *Greater Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire,* 838 F.2d 13, 20 (1st Cir.1988)). Thus, under Michigan law, general notions of fairness are central to resolving whether a party has impliedly waived privilege protection. Applying Michigan law to this case, I believe Perrigo has waived its right to claim a privilege.

Although the Michigan Supreme Court failed to provide explicit guidelines explaining which interests courts should look to in balancing fairness considerations in determining waiver of privilege, the *Howe* decision, as well as *Clamshell,* the case providing the basis for the *Howe* decision, clearly indicate several important factors. The Michigan Supreme Court in *Howe* began its analysis by noting that the Michigan Court Rules provide for broad discovery in civil cases. *See Howe,* 487 N.W.2d at 383. The court also emphasized the trial judge's finding that the privileged report sought by the defendants was relevant to their defense. *See id.* 487 N.W.2d at 383–84; *see also Clamshell,* 838 F.2d at 22 ("[D]efendants should demon-

strate that the material to be discovered is relevant to their case."). Similarly, the district judge in the Perrigo derivative suit concluded that the Formanek Report is extremely relevant to the plaintiff's ability to respond to Perrigo's motion to dismiss pursuant to MICH. COMP. LAWS ANN. § 450.1495. *See Kearney v. Jandernoa*, 934 F.Supp. 863, 866 (W.D.Mich.1996) (concluding that "the report will probably be the best evidence of Mr. Formanek's good faith and the adequacy of his investigation, or lack thereof"). Perrigo itself has acknowledged the Report's importance to its motion, stating that "the Independent Director submitted a 198–page Report to the Board that *explains in detail his findings and conclusions* that maintenance of the derivative claims would not be in Perrigo's best interests." Mot. to Dismiss at 8–9 (emphasis added).

In addition to focusing on the relevance of the privileged information, the Michigan Supreme Court in *Howe* concluded that the defendants' ability to defend against plaintiffs' claim would be "seriously undermined by plaintiffs' assertion of privilege." *Howe*, 487 N.W.2d at 384. In Perrigo's case, the district court made a similar finding, concluding that the derivative plaintiff "would be unable to properly respond to Perrigo's March 26, 1996, motion and the supporting evidence without access to the Report." Mem. Op. and Order of March 14, 1997 at 3. In light of the extreme importance and relevance of the Formanek Report, fairness considerations tilt the balance in favor of finding that Perrigo impliedly waived its privilege protection.

Perrigo's affirmative injection of the Formanek Report into the litigation further tilts the balance in favor of finding a waiver. "When [a party's] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not." *People v. Houston*, 448 Mich. 312, 532 N.W.2d 508, 516 (1995) (quoting 8 Wigmore, Evidence (McNaughton rev.) § 2327, pp. 636–38). The *Howe* decision

echoes these sentiments by indicating that the following three conditions are among the important considerations in resolving whether a party has waived its privilege protection:

(1) Assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;

(2) Through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

(3) Application of the privilege would have denied the opposing party access to information vital to his defense.

*Howe*, 487 N.W.2d at 381(quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975)).[1] Perrigo's actions clearly satisfy these three conditions.

By moving to dismiss on the basis of the disinterested independent director's reasonable investigation and conclusion that the maintenance of the suit is not in the best interests of the corporation, *see* MICH. COMP. LAWS. ANN. § 450.1495 (West 1990), Perrigo has itself made the Formanek Report particularly relevant and probative to its motion. Despite acknowledging the Report's singular importance to its motion, Perrigo did not submit the actual Report. Perrigo thus superficially tries to rely solely on the Report's bottom line while at the same time evading exposure of its 198 pages, which contain the real ammunition behind Perrigo's motion. Such selective disclosure creates an aura of unfairness and is generally disfavored. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.) ("A defendant may not use the [attorney-client] privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); *Houston*, 532 N.W.2d at 516 ("[A party] cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.") (quoting 8 Wigmore, Evidence (McNaughton rev.) § 2327, pp. 636–38). The corporation's claim of enti-

---

**1.** Although the court in *Howe* rejected the *Hearn* decision's exclusive reliance on these three factors, the court by no means found these factors irrelevant. Rather, in adopting an approach that emphasizes balancing fairness considerations, the court simply sought to provide "enhanced flexibility *beyond* the three factors to be considered under *Hearn*." *Howe*, 487 N.W.2d at 383 (emphasis added).

tlement to dismissal is enmeshed in the Report itself. It is the Report that might, in the end, permit Perrigo to dismiss the suit because the Report, not its conclusions, details the disinterested independent director's good faith and reasonable investigation. Perrigo has therefore effectively placed the substance of the Report into issue in the litigation.

Fairness considerations also require an assessment of the importance of the privilege to its holder. *See Howe*, 487 N.W.2d at 383 (stating that "plaintiffs are entitled to stand by their claim of statutory privilege and have their interests carefully weighed against those of the defendants"); *Clamshell*, 838 F.2d at 20 ("The court should ... balanc[e] the importance of the privilege asserted against the defending party's need for the information to construct its most effective defense."). The courts have long recognized that protecting the private dialogue between clients and their attorneys encourages full and frank communications between clients and their attorneys, thereby promoting sound legal advice and advocacy. *See, e.g., Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682. Removing the cloak of confidentiality afforded the Formanek Report may hinder future communications between the independent directors and attorneys reviewing whether a derivative action is in the corporation's interest. However, no one has compelled Perrigo to forego its privilege. Perrigo may freely amend its motion to dismiss to lessen the need for the Report, or it may forego its motion entirely should disclosure of the Report prove too damaging. *Cf. Clamshell*, 838 F.2d at 21 ("[P]laintiffs are not being compelled to forego their privilege. Having control of their lawsuit, they can always drop the case if disclosure of the privileged information is too high a price, .... [or] they could amend their complaint to lessen the defendants' need for the privileged information.").

I therefore believe the privilege afforded Perrigo and the Report carries relatively little weight when balanced against the considerations favoring disclosure of the Report, according to the Michigan waiver standard.

Having examined the competing interests of the parties with respect to the Formanek Report, I believe fairness considerations require the conclusion that Perrigo has surrendered the attorney-client privilege.[2] The Report's relevance and its singular importance to Perrigo's motion as shown by Perrigo's reliance on the Report demonstrates that Perrigo's motion to dismiss, "and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the [derivative plaintiff] if the privilege prevails." *Howe*, 487 N.W.2d at 383–84 (quoting *Clamshell*, 838 F.2d at 20). A similar waiver was found in *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1096 (D.N.J.1996), where an employer relied upon the reasonable investigation by its attorney as a defense to employer liability for a hostile work environment sexual discrimination case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and state law. As under Michigan law, fairness was a central element to the court's determination of waiver in *Harding. See id.* at 1092. Because there the investigation itself provided a defense to liability, fairness dictated that the employer be deemed to have waived disclosure protections for all documents produced in the investigation. *See Harding*, 914 F.Supp. at 1096. Similar fairness concerns arise in this case, for Perrigo stands in a comparable position to the employer in *Harding*. Given that fairness is a central component of Michigan's waiver law, I would hold that Perrigo impliedly surrendered any attorney-client privilege protection for the Report when Perrigo relied upon the investigation and conclusions embodied in the Report in seeking dismissal of the derivative action.

**2.** The majority's decision to permit the derivative plaintiff access to the Report appears to rest on the carving out of an *exception* to the attorney-client privilege based on the plaintiff's substantial need for the Report and the undue hardship he would experience were he denied access to the Report. By carving out an exception to the attorney-client privilege, the majority seems to leave the privilege intact with respect to other individuals and the public-at-large. In contrast, I believe *Howe* requires us to regard Perrigo's reference to and reliance on the Report in its own motion to dismiss as a *waiver* of its attorney-client privilege. Because Perrigo waived its own privilege, the majority is wrong when it asserts that the *plaintiff* has the power to waive Perrigo's privilege by submitting the Report to the court.

Similarly, I believe that such reliance on the Report by Perrigo in its motion to dismiss impliedly waives any work-product immunity protection derived from federal statutory or common law. *See* FED.R.CIV.P. 26(b)(3); *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Like the attorney-client privilege, work-product immunity may be implicitly waived by, for example, affirmative testimonial use of the work product to advance the claimant's interests. *United States v. Nobles,* 422 U.S. 225, 239–40, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975) (finding waiver where criminal defendant presented investigator as witness); *see also* 6 Moore's Federal Practice § 26.70[6][c] at 26–226 (3d ed. 1997) ("A party also impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue."). In *Harding,* the court found that the company impliedly waived work-product protection when it placed an internal investigation into issue by asserting a Title VII defense based in part upon the company's reasonable investigation into the plaintiffs' claims. *Harding,* 914 F.Supp. at 1099. In that situation, justice demanded that the plaintiffs be permitted to respond to the allegation of reasonable investigation "with a full spectrum of information." *Id.* As in *Harding,* Perrigo's affirmative act of moving to dismiss on the basis of Formanek's investigation and conclusions, which are detailed in his Report, makes it unfair for the corporation thereafter to assert work-product protection for the Report.[3]

Perrigo protests that it will face a Hobson's choice if it is held to have impliedly waived disclosure protections—either the corporation moves to dismiss, relies on the Report, and thereby forfeits protections for the Report, or the corporation suffers through potentially unmeritorious litigation but protects the confidentiality of the Report. *See* Pet. for Mandamus at 38. Perrigo has assumed this risk by moving to dismiss on the basis of Formanek's investigation and conclusions, and certainly cannot claim to be surprised by such a dilemma. Since a corporation owes a fiduciary duty to its shareholders, other courts have softened a corporation's right to assert the attorney-client privilege against its shareholders, requiring, upon a showing of good cause, that a corporation disclose corporate records to its shareholders. *See Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct: 1191, 28 L.Ed.2d 323 (1971); *Fausek v. White,* 965 F.2d 126 (6th Cir.) (extending *Garner* beyond shareholder derivative suit), *cert. denied sub nom. Selox, Inc. v. Fausek,* 506 U.S. 1034, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992). Perrigo's Board could anticipate from the outset that any report produced by the disinterested independent director would in all likelihood eventually underlie a motion to dismiss and thus become enmeshed in a dispositive court ruling. This, in itself, largely undermines any expectation of perpetual confidentiality.

I recognize that if my position were to prevail, in the future disinterested independent directors in Michigan reviewing whether a derivative litigation is in the corporate interest may not be inclined to produce ex-

---

**3.** The majority asserts that the Michigan legislature could not have intended to put a corporate defendant on the horns of a dilemma of choosing between "waiving the protection of the Report or withdrawing its motion to dismiss." This argument ignores the basic framework of this case: Perrigo has referred to and relied on the Report in its motion to dismiss. Where a party faces the foreseeable dilemma of relinquishing its privilege because of its own affirmative reliance on confidential material or foregoing a complaint or defense, courts generally have resisted judicially created exceptions to the implied waiver doctrine even where failure to do so may weaken attorney-client communications. *See, e.g., Glenmede Trust Co. v. Thompson,* 56 F.3d 476 (3rd Cir. 1995) (finding implied waiver where trust company asserted reliance on advice of counsel as an affirmative defense to claim for breach of fiduciary duty); *United States v. Bilzerian,* 926 F.2d 1285 (2nd Cir.1991) (defendant in securities fraud case impliedly waived attorney-client privilege where he asserted reliance on advice of attorney as a defense). While those facing a dilemma similar to Perrigo's may believe their predicament unfair, allowing one party to refer to and rely on privileged material that is kept secret from the opposing party also is unfair and inhibits the truth-seeking process. In this situation the Michigan legislature would be more likely to emphasize the importance of maintaining fair judicial proceedings, and would not be likely to direct the Michigan courts to abandon the traditional implied waiver doctrine.

tensive written materials.[4] Nonetheless, the corporate board will be well-advised to ascertain for itself that the disinterested independent directors acted in good faith and conducted a reasonable investigation. At minimum, the board should seek assurances that the corporation has a legitimate basis for moving to dismiss in compliance with Rule 11 of the Federal Rules of Civil Procedure or its state law equivalent. This evaluation will be best undertaken with all of the requisite facts and supporting documentation before the board.

When examined closely, the view I express today does not erode attorney-client or work-product protections, but rather holds a party accountable when the party attempts to profit unilaterally by relying upon the conclusions of a document without reciting anything contained within its four corners. Once Perrigo moved for dismissal based upon Formanek's investigation and determination, the company lost its ability to conceal the Report from the derivative plaintiff, the court, and presumably the public; it was as if Perrigo had actually attached the Report to its own court filing.

## II

Judicial records are presumptively open to the public. Like the public's right to monitor the functioning of courts by observing trials, the public has a presumptive right to inspect and copy judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 569–73, 100 S.Ct. 2814, 2823–25, 65 L.Ed.2d 973 (1980). The strong presumption of public access to materials used in the adjudicative process fosters confidence in the administration of justice by assuring that courts are fairly run and that disputes presented for resolution in a public forum are open and understandable to the public. *See Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). There are, of course, limited common-law exceptions to the potent presumption in favor of maintaining openness to the courtroom and court documents. As explained in *Brown & Williamson,* the presumption may be overcome by the need to keep order and dignity in the courtroom or by a particularized special need for confidentiality, such as when trade secrets, national security, and certain privacy rights of trial participants or third parties are implicated. *Id.* at 1179.

Sealing court records, however, is a drastic step, and only the most compelling reasons should ever justify non-disclosure of judicial records. *See In re Knoxville News–Sentinel Co.,* 723 F.2d 470, 476 (6th Cir.1983). "The public has a strong interest in obtaining the information contained in the court record," including ascertaining what evidence the court relied upon in reaching its decision. *Brown & Williamson,* 710 F.2d at 1180, 1181. If absolutely necessary, however, trial courts do have the power to seal court records and files when interests of privacy and confidentiality outweigh the public's presumptively paramount right to know. *See* FED.R.CIV.P. 26(c). In the instant petition, Perrigo has not made a persuasive case that overriding confidentiality concerns should prevent the public from having access to the Formanek Report should it become part of the judicial record.[5]

---

**4.** The majority asserts that the Michigan legislature could not have intended to discourage open communication between disinterested independent directors and counsel. Although that may well be true, the majority itself notes that the statute "does not require that the disinterested independent director issue a report with its recommendation, nor does it require that he consult with counsel."

**5.** The majority argues that the Michigan legislature could not have intended "automatic public disclosure of the Report upon the filing of a motion to dismiss under the Michigan statute" because to do so may deter frank communications between independent directors and attorneys. To clarify, I do not argue in support of an "automatic public disclosure" of privileged material simply upon the filing of a motion to dismiss. Rather, my position is that if and when the Report is included in the court record, the district court should apply the presumption favoring public access to court records.

While it may be true that the Michigan legislature would be concerned about promoting candor between independent directors and attorneys assisting with internal investigations, the Michigan legislature has an explicit policy favoring

In *Joy v. North,* 692 F.2d 880 (2d Cir. 1982), *cert. denied sub nom. Citytrust v. Joy,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983), the Second Circuit held that the report of a special litigation committee recommending termination (and settlement as to some defendants) of a shareholder derivative suit was improperly placed under seal by the trial court. Rather than just being used in discovery, the report played an essential role in the corporation's moving for summary judgment: "An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny. We simply do not understand the argument that derivative actions may be routinely dismissed on the basis of secret documents." *Id.* at 893. The Second Circuit went even further and required the company to disclose not only the report, portions of which had been produced under a protective order, but also "all underlying data." *Id.* "To the extent that communications arguably protected by the attorney-client privilege may be involved in that data, a motion for judgment based on the report waives the privilege." *Id.* (footnote omit-

ted). Similarly, materials communicated from independent counsel to the committee were not entitled to work-product immunity protection, "since the papers may be part of the basis for the committee's recommendations." *Id.* at 894.

While I understand that the statutory inquiry and burdens at issue in *Joy* differ considerably from Michigan's framework, I firmly believe that the fundamental principles enunciated by the Second Circuit apply with equal force in Perrigo's situation. Confidence in the administration of justice would be severely weakened if a Michigan corporation is able to dismiss a derivative suit on the basis of mere conclusions of disinterested independent directors who have been allowed to perform their work in secret. *See Joy,* 692 F.2d at 893.[6]

The Seventh Circuit has likewise concluded that the strong presumption of public access overcomes a corporation's interest in confidentiality when a special litigation committee report is submitted in support of a motion to terminate a derivative action. *Matter of*

---

open judicial proceedings. *See* MICH. COMP LAWS ANN. 600.1420 ("The sitting of every court within this state shall be public...."). Nowhere do the provisions of the Michigan Business Corporation Act mention the importance of the attorney-client privilege held by corporations, let alone indicate that it is essential to fulfillment of the statutory goal of promoting effective monitoring of management by independent directors. I therefore see no reason to assume that the Michigan legislature intended to abandon the compelling public policies furthered by open adjudicative proceedings in favor of the policies served by candid discussions between independent directors and hired counsel. Consequently, unlike the majority, I would adhere to precedent and respect the strong presumption of public access to materials utilized in judicial proceedings. *See Nixon,* 435 U.S. at 597, 98 S.Ct. at 1311–12; *Richmond Newspapers,* 448 U.S. at 569–73, 100 S.Ct. at 2823–25. Once the Report is submitted to the district court and becomes part of the trial court record, the public's presumptive right to inspect and copy judicial records requires that the public have access to the portions of the Report in the trial court record. The potent presumption favoring open access to the courtroom and court documents should not yield to Perrigo's desire to conceal the Report absent Perrigo demonstrating a compelling reason, such as an actual trade-secret, to set aside the presumption. *See Brown & Williamson,* 710 F.2d at 1179; *In re Knoxville News–Sentinel,* 723 F.2d at 476.

The majority wrongly begins with a presumption favoring Perrigo, challenging the plaintiffs and the public to overcome this erroneous presumption. Our judicial precedent does not support this scheme. By instructing the district court to "study, examine, interpret, and inspect the Report without making it public property in connection with the disposition of the motion to dismiss," the majority conceals the record of this case behind a veil of secrecy, thereby threatening to undermine public confidence in our judicial system.

**6.** This court has previously endorsed the Second Circuit's approach in *Joy,* noting that the court

was responding ... to the natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public. This desire, however, cannot be accommodated by courts without seriously undermining the tradition of an open judicial system. Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know. In such cases, a court should not seal records unless public access would reveal legitimate trade secrets, a recognized exception to the right of public access to judicial records.

*Brown & Williamson,* 710 F.2d at 1180.

*Continental Illinois Sec. Litig.,* 732 F.2d 1302 (7th Cir.1984). "[W]hen the report is used in an adjudicative procedure to advance the corporate interest, there is a strong presumption that confidentiality must be surrendered." *Id.* at 1315. Two circuits have thus valued public scrutiny of special litigation committee reports as a grave public concern that generally overcomes a corporation's asserted need to place such records under seal.

Because in fairness Perrigo has waived the protections afforded by the attorney-client privilege and the work-product doctrine for the Formanek Report since it constructively brought the Report into issue, on the record currently before this court I see no compelling reason to foreclose public access to the Report if and when it is included by a party in a court record.[7] Simply showing that public access would harm the company's reputation is generally not sufficient to justify

sealing a court record. *Brown & Williamson,* 710 F.2d at 1179. And at this juncture Perrigo has not demonstrated any specific cognizable injury, save that the *Picard* plaintiffs, like the public at large, will have a right to view the portions of the Report that become part of the judicial record. Should Perrigo claim a need for special protection of specific segments of the Report under the standards articulated in Rule 26(c) and *Brown & Williamson,* for example if actual trade secrets might be revealed, then the district judge remains free to order particularized protection.

## III

Because I do not believe that a writ of mandamus should issue under the present circumstances, even if narrowly drawn as the majority suggests solely to set aside the por-

---

7. The majority asserts that *Howe* supports its allowing access to the Report by the parties and the court but not by the public. The majority relies on the following language in *Howe:*

> In applying the balancing test, we counsel that a court "should begin its analysis with a presumption in favor of preserving the privilege." Accordingly, the burden of establishing a waiver under the balancing approach rests on the party seeking discovery. Further, we emphasize that discovery, if allowed, should be *narrowly limited* to those portions of the privileged material *that bear directly on the issues at hand.*

*Howe,* 487 N.W.2d at 383 (citations omitted) (emphasis added by majority). The majority misconstrues this statement. Rather than permitting a selective waiver with respect to *who* gains access to the privileged material, the statement simply concerns *which portions* of the privileged material will be deemed waived. As the Third Circuit explained,

> the word "limited" refers to two distinct types of waivers: selective and partial. Selective waiver permits the client who has disclosed privileged communications to one party to continue asserting the privilege against other parties. Partial waiver permits a client who has disclosed a portion of privileged communications to continue asserting the privilege as to the remaining portions of the same communications.

*Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1423 n. 7 (3rd Cir.1991). The *Howe* decision simply addresses "partial waiver," and says nothing about granting "selective waiver," which shields from public view evidence examined by the court and the parties. *Cf. Howe,* 487 N.W.2d at 385 (directing that the trial court examine and, "[i]n keeping with our holding that discovery allowed under these circumstances should be narrowly confined," excise the "portions of the report, if any, which do not bear directly on the issues at hand"). The majority is thus left with no Michigan law supporting its action.

The majority states in footnote 9 that it refrains from deciding whether it would approve of a "selective" waiver in this case. The case that it relies on to support selective waiver, *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 611 (1978) (en banc), has been strenuously criticized. *See Westinghouse Elec.,* 951 F.2d at 1423–29 (3rd Cir.1991) (arguing that limited or selective waiver fails to serve the interests underlying the attorney-client privilege, and that the privilege should not be converted into a tool for selective disclosure in order to thwart the truth-finding process); *Permian Corp. v. United States,* 665 F.2d 1214, 1219–21 (D.C.Cir.1981) (rejecting *Diversified* and selective waiver theory).

Where the balancing of fairness considerations leads to the conclusion that a party has impliedly waived its privilege, the privilege is destroyed. For the reasons explained above, Perrigo has impliedly waived its disclosure protections for the Report. I simply note that Perrigo has not argued that any portion of the Report contains information irrelevant to the derivative litigation; indeed, because the Report presents Formanek's conclusions as to whether maintenance of a derivative suit is in Perrigo's best interests, it would be surprising if any portion of the Report proved irrelevant. Thus, I see no reason why Perrigo's waiver should not apply to the entire Report. Having waived its privilege, Perrigo cannot now assert a claim of privilege in an attempt to prevent disclosure of the Report to the public-at-large.

tion of the district court's order recognizing public access, I therefore dissent from the issuance of the writ.